### E. O. TENISON v. E. G. PATTON ET AL.

#### No. 1970. Decided March 17, 1902.

**1.—Trustee—Deriving Advantage—Directors of Corporations.**

While the principle that a trustee, though he may buy or be interested in buying directly from his beneficiary, may not buy from himself nor secure to himself an advantage in the purchase of the trust property by another from him, applies to transactions between a corporation, by its board of directors, and individual directors or trustees, a director may, in some circumstances, divesting himself of his representative character, deal with the corporation, through other directors not so disqualified, as other trustees may deal directly with their beneficiaries. (Pp. 290-294.)

**2.—Same—Corporation—Disqualifying Interest of Directors.**

Though the personal interest of a director in a transaction disqualifies him from acting in it as a representative of the corporation, the other directors are not disqualified thereby from acting for and binding the corporation in dealing with him, where the contract, upon close scrutiny, is found to be fair. (P. 293.)

**3.—Same—Trustee Interested in Purchase.**

A bank director who held title to land as trustee for the bank and also as security for advances made by him for the bank, by authority of the directors sold it to a third party for a cash price satisfactory to the directors, which was offered with the understanding, made known to the directors, that the trustee was to take charge of subdividing and reselling the land for the purchaser, and to share in any profits over the purchase price. Held, that the trustee was not, as a matter of law, liable to the bank for the profits gained by him through such resale, but the question was one of fact, the burden being on him to show the fairness of the transaction. (Pp. 289-295.)

**4.—Same—Excess in Land.**

That there was an excess of 50 acres in a tract of land which was supposed by both parties to contain 640 was not a circumstance to show fraud in the transaction. (P. 295.)

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Dallas County.

Suit was brought by Patton and others against Tenison, with judgment for plaintiff, affirmed on appeal by defendant, who then obtained writ of error.

*J. C. Muse* and *McCormick & Spence,* for plaintiff in error.—The court erred in refusing to give in charge to the jury defendant's first requested special issue, as follows: "Did E. O. Tenison, before the board of directors of the defendant bank passed the resolution authorizing the sale of the land in controversy, fully and fairly disclose to said board of directors all that he knew concerning the land, its value, condition, and

amount, and the condition of its title, and also fully and fairly inform said board of directors at said time, that if the sale to J. C. O'Connor was made, he, E. O. Tenison, had agreed with O'Connor that he, Tenison, would represent him in the improvement and resale of said land, and that he, Tenison, was to receive one-half the net profits realized from the sale thereof after deducting the purchase price and interest thereon at 6 per cent per annum, and such expenses as might be necessary in effecting said resale and improvements. Gas Co. v. Berry, 113 U. S., 322; Railway v. Credit Mobilier, 135 Mass., 367; 1 Beach Priv. Corp., sec. 242, p. 399; Harts v. Brown, 77 Ill., 226; 1 Beach Mod. Eq. Jur., sec. 136, p. 150, et seq.; U. S. R. S. Co. v. Atlantic R. Co., 34 Ohio St., 450; 3 Thomp. on Corp., sec. 4070, p. 2971; Battile v. Cement Co., 37 Minn., 89; Mecham on Agency, sec. 466, p. 311; Beeson v. Beeson, 9 Pa. St., 298; Rochester v. Levering, 104 Ind., 562; Barr v. Plate Glass Co., 57 Fed. Rep., 86; Oil Co. v. Marbury, 91 U. S., 587; Clark v. Coal Co., 53 N. W. Rep., 293; Mora. Priv. Corp., sec. 527; Railway v. Adams, 87 Texas, 131; Seale v. Baker, 70 Texas, 291; Canning Co. v. Fraser, 81 Texas, 413; Erskine v. DeLabaum, 3 Texas, 413; The Howards v. Davis, 6 Texas, 183; March v. Hubbard, 50 Texas, 207; Connolly v. Hammond, 51 Texas, 647; Mora. on Corp., 2 ed., sec. 527.

The court erred in refusing to give in charge to the jury the defendant's fourteenth special issue, as follows: "What was the value of the bank stock received by O'Connor in the sale of the land sold by him to Pruitt?" Paschal v. Acklin, 27 Texas, 173; Cole v. Crawford, 69 Texas, 124; Gen. Laws 25th Leg., 1897, p. 15; Gen. Laws 26th Leg., 1899, p. 190.

The court erred in refusing to give in charge to the jury the defendant's tenth requested special issue, as follows: "What was the cost of the improvements placed on the land by O'Connor before the same was sold by him?"

The court erred in refusing to give in charge to the jury the defendant's eleventh special requested issue, as follows: "What was the amount of commission paid by O'Connor for the sale of the land by O'Connor to Pruitt?"

The findings of the jury and the uncontroverted facts are insufficient to sustain the judgment for the plaintiffs, for that the amount of the recovery can not be arrived at from the findings of the jury; and for that the undisputed evidence showed that at the time of the trial Tenison had received no part of the profits in the sale of the land made to Pruitt under his contract with O'Connor, and that the title to the 90 acres unsold was still in O'Connor, and for that there was no finding as to the value of the 90 acres or any part of the land at the time of the sale to O'Connor by the bank. Mecham on Agency, secs. 766, 767; Story on Agency, sec. 418.

The evidence is not sufficient to sustain any judgment for the plaintiffs, because the uncontroverted evidence showed that the sale was made to O'Connor without fraud and in good faith, and therefore was no vio-

lation of public policy; and if it be held that the sale as to Tenison was contrary to public policy, the same is founded alone upon constructive fraud. And by the undisputed evidence it appearing that Tenison had received no part of the profits upon that portion of the land sold, and that the remainder of the land—90 acres—still remains owned by O'Connor, judgment can not be rendered against Tenison for what he has never received, or for what he can never receive from O'Connor, if it be held that his contract with O'Connor was contrary to public policy as to the bank. Pom. Eq. Jur., sec. 1076; Porter v. Woodruff, 36 N. J. Eq., 187.

The court erred in rendering judgment against the appellant, Tenison, for that the issue of good faith and fairness of the sale to O'Connor was requested to be submitted to the jury and refused. The evidence was undisputed that the sale was without fraud on the part of the directors and without fraud on the part of Tenison, and the finding that the contract between O'Connor and Tennison was void as against public policy could only be sustained by the verdict of the jury finding actual fraud. Manufacturing Co. v. Bradley, 105 U. S., 182; Smith v. Skeary, 47 Conn., 47; Stratton v. Allen, 16 N. J. Eq., 229; Leavitt v. Oxford, etc., Co., Pac. Rep., 356; Budd v. Walla Walla P. & P. Co., 7 Pac. Rep., 896; Roy & Co. v. Scott, Hartley & Co., 39 Pac. Rep., 679; Wausau Boom Co. v. Plumer, 35 Wis., 274; Perry on Trusts, sec. 195; Brown v. Cowell, 116 Mass., 461; Farnam v. Brooks, 9 Pick., 212; 1 Bigelow on Fraud, 296, 318.

The court erred in rendering judgment against Tenison, as shown by the record, for that, the plaintiffs did not make O'Connor a party to the suit, and thereby ratified the sale of the land to him made by the bank. And in any event the plaintiffs could only recover of Tenison the profits by him actually received from the resale of the land, and the undisputed evidence showing that he received no profits, no recovery could be had against him.

The court erred in refusing to give in charge to the jury the defendant's second special requested issue, as follows: "When the land was conveyed by the defendant bank to J. C. O'Connor, what was the reasonable, fair market value thereof?" Canning Co. v. Fraser, 81 Texas, 413; Drury v. Cross, 7 Wall., 299; Millsaps v. Chapman, 71 Am. St. Rep., 549.

The court erred in rendering judgment against Tenison, as shown by the record, for that plaintiffs, having ratified the sale by the bank to O'Connor, could only receive the difference, if any, between the market value of the land at the time of such sale and the price paid by O'Connor, and then only in the event that Tenison had received such sum as his part of the profits under the contract with O'Connor.

The court erred in overruling defendant's motion to render judgment in favor of the defendant and in favor of said E. O. Tenison. Marsh v Hubbard, 50 Texas, 208; Howard v. Davis, 6 Texas, 174; Scott v. Mann, 33 Texas, 725; Connolly v. Hammond, 51 Texas, 635.

The Court of Civil Appeals erred in holding that applicant in dealing with other members of the board of directors of the State National Bank was not dealing with the bank, because in such a transaction the bank could only be represented by its stockholders, and that therefore Tenison did not occupy the relation of an agent dealing directly with his principal. Manufacturing Co. v. Bradley, 105 U. S., 183.

*Finley, Etheridge & Knight* and *Crawford & Crawford,* for defendants in error.—A director's purchase of property from the corporation is voidable at the option of the corporation or stockholders, even though the director paid as much or more than the property was worth. And in no case will the transaction be sustained where the trustee interested in the purchase of the corporate property was instrumental in bringing about the sale. Cook on Corp., sec. 653.

The incapacity of a trustee to become the purchaser at his own sale rests upon the ground of public policy. It is wholly immaterial whether the property brings its full value. So jealous is the law of the interest of the cestui que trust that it will not tolerate the slightest antagonism from the trustee. Bassett v. Shoemaker, 20 Atl. Rep., 52.

If the trustee is himself interested in the purchase he would be, and is in fact, both buyer and seller, and the cestui que trust is entitled as of course to have the sale set aside. 1 N. Y. Ch. Rep. (Law ed.), 366-368, bottom paging.

Where trustees, through intervention of a third party, obtained an interest in the trust estate which was sold at a large profit, the court said: "Such a purchase by them is against the plain and salutary policy of the law, and can not be sustained. They took the profits on the resale in their fiduciary character towards the trust fund, and are accountable for them to the corporation." In re Taylor Orphan Asylum, 36 Wis., 551; Price v. Thompson, 84 Ky., 227; Cook v. Woolen Mill Co., 43 Wis., 440; 2 Pom. Eq. Jur., secs. 957-8; Railway v. Bowler, 9 Bush (Ky.), 468; Coal Co. v. Sherman, 30 Barb., 553.

Where a director purchases for $8000 property of the company sold at execution issued on a judgment obtained by him against the company, and within a year sells the property for $23,000, he must account to the corporation for the profits. 2 Cook on Corp., sec. 653, note 3.

Where trust property has been wrongfully sold the beneficiary may, at his election, claim the property or its proceeds. Silliman v. Gano, 39 S. W. Rep., 562.

It is true that sales made by a trustee to himself have been upheld in Texas, and would be in any jurisdiction under similar circumstances. But what kind of a trustee can sell to himself in this State? Certainly not one who has the management and control of a large corporation for the benefit of its stockholders.

In Bohn Bros. v. Davis, 75 Texas, 25, the court says: "A mortgagee is a trustee, but in a qualified sense. He does not hold for the benefit of others, but for himself. He is a cestui que trust, as well as a trustee.

He has an interest in the property. It is pledged expressly to secure his claim, and were he deprived of the power to purchase he might suffer great loss by a sale at a low price. * * * Sales at foreclosure are open and public, and are made after long notice, and it is to the interest of the mortgagor that the mortgagee should enter into the competition at the sale."

In Connolly v. Hammond, the court holds that the sale by the agent for his own benefit, is prima facie voidable, but that the right to set the act aside was lost by delay. 51 Texas, 640.

In Erskine v. De Labaum no trust relation existed between the purchaser and the heir. 30 Texas, 421.

The undisputed evidence shows that but $11,000 was paid for the 690 acres of land. Of this amount the bank received but $3000. Tenison, without any previous authority, disposed of the other $8000. Six hundred acres were sold to Pruitt for $14,000 in money, vendor's lien notes and bank stock, all of which Tenison says was accepted as money. The 90 acres was sold for something over $2400, but was taken back, the purchaser failing to pay for the land. Having converted the land the trustee could not afterwards acquire the title and compel the cestui que trust to take it back. Silliman v. Gano, 39 S. W. Rep., 559: Oliver v. Piatt, 3 Howard, 401.

But the court submitted to the jury the value of the 90 acres at the time of trial. And for one-half the value of the land, 90 acres, and one-half the profits on the sale to Pruitt, $3000 less $420, the court gave judgment against appellant Tenison.

Under the facts of this case Tenison might have been made to account to the stockholders for all the profits made in the transaction. Under the agreement with O'Connor he was to receive one-half, and certainly there is no rule of law or equity which would protect him simply because there has been no division of the spoils between him and his confederate.

The fact that Tenison did not vote at the directors' meeting is of no moment. He was present. He advised a sale in bulk. He negotiated the sale to O'Connor. "The passive connivance of a director renders him liable the same as though he participated." Weetjen v. Vibbard, 5 Hun, 265; Cook on Corp., sec. 653, note 2.

Tenison was not a mortgagee. He advanced the money as a volunteer. The board of directors never authorized him to compromise the suit in which the title to the land was involved, never asked him to advance the money, and never authorized him to sell the land in the open market at a fair public sale after notice. In effect the board of directors simply ratified the sale which Tenison had previously made to O'Connor.

Appellees submit as a proposition: That if a trustee can purchase the trust property at all, he can only do so at a fair, open, and public sale, after timely notice of the time and place of such sale. And no trustee can purchase the trust estate at a sale brought about through his instrumentality. We think the case of the Twinlick Oil Co. v. Marbury, 91 United States, 587, fully supports this proposition. Mr. Cook in his

work on Corporations says: "One of the most frequent frauds perpe-
trated upon a corporation and its stockholders is where one or more of
the directors purchase property from the corporation either directly or
indirectly or participate in the profits of such purchase." 2 Cook on.
Corp., sec. 653; Id., 643.

The rule which prohibits the trustee from speculating upon the trust
estate can not be too rigidly enforced. The trustee should know that
under no circumstances can he make a profit out of any dealings with
the trust estate, and that he must not place himself in a position where
his interest conflicts with his duty.

WILLIAMS, ASSOCIATE JUSTICE.—This action was brought by de-
fendants in error in behalf of the stockholders of the State National
Bank of Dallas, by two of their number, against the bank, Tenison, and
others of its officers, one of its objects being to require Tenison to ac-
count for profits derived by him from the sale of a tract of land belong-
ing to the bank while he was acting as its director, trustee and agent.
The land had been conveyed to Armstrong, president of the bank, in pay-
ment of a debt due to it, and while he so held the legal title in trust, the
title became involved in litigation with third parties. Before this, how-
ever, the State Bank had gone into liquidation and had arranged for a
conveyance of most of its assets to the City National Bank, retaining
only such as were not available in this way, among which was the land.
Tenison, who was a director and had been the cashier of the State Bank,
had the chief management of the assets remaining in its hands and had
charge of the suit about the land. A compromise of the suit was agreed
upon, to effect which it became necessary for the bank to pay to adverse
parties the sum of $7500, and, as it had no funds on hand, Tenison ad-
vanced this sum, and thereafter Armstrong conveyed to him the legal
title in trust for the bank and as a security for the money advanced.
The land was thus held for sale and a distribution of its proceeds among
the stockholders, after paying the amount advanced by Tenison. Teni-
son received from J. F. O'Connor a proposal to pay $11,000 for it if he,
Tenison, would look after and sell it, O'Connor agreeing, at the same
time, to allow Tenison one-half of the net profit derived from such sale
after paying the expenses and returning to O'Connor the purchase
money with 6 per cent interest. A meeting of the board of directors was
called at which more than a quorum were present and acted, without
Tenison, and the offer of O'Connor was submitted and accepted, Tenison
not voting.

The evidence tended to show that Tenison had previously made in-
quiries as to the value of the land and efforts to secure a satisfactory
offer for it, in the county where it was situated, and had failed. He had
visited the land twice, in company with a surveyor and real estate agent
who was acquainted with the value of lands in that section and who had
examined and made a map of the tract in question. The highest valua-

tion put upon it by this person was $11,000. In this, however, he allowed a margin of at least 25 per cent for a profit to the purchaser, to be realized by subdividing, improving, and selling on time; and the conclusion is justified that in buying, Tenison and O'Connor contemplated the making of some such profit by thus managing the land after it should be purchased, Tenison testifying that in this way he expected to realize $2000. The other directors had little knowledge of the land and its value, except such as they derived from Tenison, but the jury could have concluded from the evidence that Tenison made a full and fair disclosure to them, at the meeting, of all facts within his knowledge affecting the sale, as well as of the interest which he was to have with O'Connor, and that he took no advantage of his position in securing the trade, and that the directors acted freely and fairly upon the facts laid before them, uninfluenced by him. At the meeting, the probability of realizing more money from the land by improving and selling in subdivisions and on time, as indicated, was discussed, and the conclusion was reached that the bank had no funds for such a purpose and that it was best to sell for cash at the price offered; and the jury could have found that the price offered by O'Connor was the highest that was obtainable and the fair value of the land in its then condition.

The resolution adopted by the directors authorized Tenison to convey the land to O'Connor for the price named and pay himself for his advances and expenses previously incurred, ratifying the conveyance which had been made to him by Armstrong; and Tenison accordingly made the deed to O'Connor, received and applied the price according to the resolution, and thereafter acted with reference to the land under his agreement with O'Connor and a power of attorney from the latter. The remainder of the price, after deducting Tenison's claim, was distributed among stockholders. At the time of the sale, all parties supposed the tract to contain 640 acres, but afterwards, Tenison, acting for O'Connor and himself in having it surveyed, discovered that there were 690 acres. He made some improvements on it, and, after some effort, sold 600 acres within a year from the time of O'Connor's purchase for $14,000, of which $7350 was paid practically in cash and the remainder on six and eighteen months time. Within a short time he also sold 90 acres on time at $2493.35, but the purchaser never paid for it, and it was taken back with probably some improvement and was on hand at the time of the trial.

The only question submitted by the trial court to the jury was as to the value of the 90 acres at the time of the trial; and for half of this value as found and half of the profit on the sale of the other part of the land, less some expense, the court held, upon the undisputed facts, Tenison was liable, and rendered judgment against him. This was affirmed by the Court of Civil Appeals.

The defendant, in writing, requested the submission of various other issues, the requests being sufficient to raise the questions discussed.

The argument in support of the judgment rests upon the principle that

a trustee or person occupying a fiduciary relation to another is incapacitated in equity to buy from himself property committed to his care, or secure to himself an advantage in a purchase of such property by another from him. This principle has long been established, and, in its proper spirit, is to be fully recognized and enforced. The chief difficulty in the present case is to determine its scope and the extent of its application to the transaction in question.

While it is true that one filling such a position can not sell to and buy from himself, or be personally interested in a sale by himself to another, it is equally true that he may, under proper circumstances, buy, or be interested in buying, directly from his beneficiary. The reason given by courts of equity for the rule that a trustee may not sell to himself the property of the cestui que trust is that the latter is entitled to the disinterested management and judgment of the trustee in effecting a sale, and that his self-interest must not be allowed to intervene to conflict with and probably prejudice that of his constituent. Another reason given is that such a dealing would lack the element essential to a contract of two competent parties, the trustee being disqualified by his personal interest from representing his beneficiary.

This principle has been applied by the courts of England to a great variety of transactions, and it has been very generally held that sales and purchases and other contracts in which trustees or agents represented their constituents, and, at the same time, themselves or other parties, were voidable at the mere option of the beneficiary, whether the transaction was found to be otherwise fair and honest or not. It is also fully recognized and enforced by the courts of this country, but has not always been carried to quite the same extent as in England. Thus, in this and some other States it has been held not to prohibit purchases by mortgagees at their own public sales made under powers given in the mortgages. The Howards v. Davis, 6 Texas, 174; Allen v. Gillette, 127 U. S., 596. The exceptions represented in this class of decisions have little to do with the present case. They serve, however, to show that the rule is often stated too broadly, both by elementary writers and in the dicta of courts.

Proceeding upon this principle, cases involving transactions between one of several trustees, with his cotrustees, have been brought within its operation and subjected to the same results as those which attach to a transaction in which one trustee represents the beneficiary, having, at the same time, an adverse interest of his own; and this without regard to the question whether or not the cotrustees had the power to act without the concurrence of their interested associates.

Difficulties have arisen in applying the doctrine to transactions between a corporation, acting by its board of directors or governing trustees, and particular directors or trustees. It is firmly established that such directors and trustees occupy towards the company and its shareholders a fiduciary relation which brings them within the operation of equitable principles, and it has been frequently laid down in the broad-

est terms that, such is the duty of each of them to give to the company his disinterested efforts in promoting its interests, that a purchase from or sale to it by one of them may be avoided at its option, whether the transaction be fair or not, and although the corporation were represented by other directors who would be competent to act for it in the same kind of a transaction with one not connected with the company. It is said that each director is under obligation in such transactions to give to his associates the benefit of his unbiased aid and counsel, and that he can not divest himself of this duty nor be released from it by his cotrustees. For this reason, many of the authorities treat such transactions as being controlled by the principle that a trustee can not purchase from, sell to, or deal with himself in the management of trust property, rather than that which governs transactions occurring directly between the trustee and cestui que trust. Carried to its logical results, this view would seem to avoid, at the mere option of the corporation or any one of its stockholders, any contract which a director might make with the company, for the reason given is that the danger of abuse and of concealment of fraud or unfairness is so great that a court of equity will not inquire into the fairness of the transaction but will allow the beneficiary the option of avoiding it whether fair or not. Aberdeen, etc. Railway Co. v. Blaikie, 2 Eq., 1286; Imperial Mercantile Assn. v. Coleman, 40 L. J. Ch., 262; A. C. L. R. 6 Ch., 565; Cumberland Coal Co. v. Sherman, 30 Barb., 563. Actual adjudications have not always carried the doctrine to this extent, and in this country, at least, many of the decisions are wholly inconsistent with such an extension of it.

The right of directors to make fair contracts generally with the corporation is comprehensively stated by many authorities, and such contracts have been upheld in numerous cases, some of them involving purchases of corporate property. Manufacturing Co. v. Bradley, 105 U. S., 182; Rolling Stock Co. v. Railroad, 34 Ohio St., 450; Twin-Lick Oil Co. v. Marbury, 91 U. S., 587; Harts v. Brown, 77 Ill., 226; Choteau v. Allen, 70 Mo., 338; Kitchen v. Railway, 69 Mo., 244; Cavendish-Bentinck v. Fenn, 12 App. C., 652; Ashhurst's Appeal, 60 Pa. St., 290. The authorities examined are so numerous that only a few are cited.

It is doubtless right to allow a beneficiary the option of avoiding a trade affecting his interests which has been effected by a trustee representing both parties to it, for the reason that the trustee ought not to be allowed to act for and bind two parties having conflicting interests. It may be perfectly just to apply this principle to transactions in negotiating which a director or directors of a corporation were personally interested, and, at the same time, represented the corporation, either alone or conjointly with codirectors; and this is probably the true spirit of the rule as it has been enforced in most of the cases. But we think it is not true that one who holds the position of director is incapable, under all circumstances, of divesting himself of his representative character in a particular transaction and dealing with the corporation through others competent to represent it, as other trustees may deal directly with the

beneficiaries. This proposition seems to be recognized in the opinion in the case of Cavendish-Bentinck v. Fenn, supra, as well as in many of the American courts.

The corporation is a separate entity for which its board of directors acts. The persons having the beneficial interest in the property are the stockholders, but their rights are centered in the corporation and are managed and controlled through the board of directors as the active representative of the company, and it is through it and not the stockholders that business dealings are carried on. When a personal interest of one of them springs up adverse to that of the corporation, it disqualifies him to act concerning it as one of the representatives or agents. But the others do not lose their representative capacity and still have power to bind the company. The disqualified director can not deal with them as a stranger, because the position of confidence which he has held has enabled him to gather an intimate knowledge of the affairs of the corporation and to exercise influence upon those associated with him in their management. But the company is represented by those who alone can act for it, and if they are disinterested, he can, we think, deal with them as any other trustee can deal with the cestui que trust, if he makes a full disclosure of all facts known to him about the subject, takes no advantage of his position, deals honestly and openly, and concludes a contract fair and beneficial to the company. The board, in such transactions, acts in a fiduciary cpacity to the stockholders, and for this reason, should not be allowed, in making a contract with their codirector, to sacrifice the interests of those committed to their charge. Such a transaction is always to be subjected to the closest examination, and a contract between those so situated which is prejudicial to the corporation should be held to be a fraud upon it; but it by no means follows from this, we think, that they can make no contract at all which is binding on the company and stockholders. The true interests of all may be best promoted in this way. A director, on account of his knowledge of the affairs of the company and his interest in its welfare, may be, often is, in a position to make a trade better for all concerned than can be made with strangers. The duty of the board of directors in such a situation being to look alone to the interests of the corporation, it would seem to conflict with a rule that they can not deal with one of the body where that duty would be best performed by so doing. Such an absolute rule would put it in the power of one stockholder, where the corporation will not act, to avoid, at his mere option, a transaction which was beneficial to all and which all but himself desire to maintain. This is true because the doctrine is that a dealing of the character supposed is a constructive fraud, and, if this be true, and those controlling the corporation refuse to rectify it, other rules would seem to permit any stockholder to proceed in behalf of the corporation.

We are therefore of the opinion that, situated as was this corporation, the mere fact that Tenison was a director of the corporation and was interested on both sides of the transaction in question does not conclu-

sively establish its voidability. That, at the worst, it was only voidable nearly all of the authorities agree, the principal difference being upon the question whether or not it was voidable at the mere option of beneficiaries without inquiry into its inherent fairness.

Another principle invoked to sustain the judgment is that which declares that a trustee, in dealing with trust property, can not claim for himself, but must yield to the beneficiary any profit which he makes, a principle which is universally recognized and to which we fully assent. That for which Tenison is held accountable is the money realized out of the property by another sale made after O'Connor acquired it and after the expenditure of time, money, and energy. If the transaction in which it was so acquired by O'Connor was valid against such an attack as has been made upon it and vested in O'Connor an indefeasible title to it, its necessary effect was to take it out of the assets of the corporation and to put an end, with respect to it, of any trusteeship on the part of Tenison to the corporation. If such was the result, he thereafter acted for himself and O'Connor.

On the other hand, if, upon proper investigation, the result should be that a right existed in the plaintiffs in behalf of the corporation to avoid it, this would be because the sale was an actual or constructive fraud by reason of which Tenison would stand in the attitude of a constructive trustee and could be made to account as such. He could not destroy this liability by a sale, but would be responsible to the corporation for any profit which he received in his subsequent dealings with the property. But it is only in this view that profits realized by him in his further management can be reached.

The cases in which trustees have been held liable for profits upon the principle stated, have generally arisen where, in the acquisition or disposition of property for the beneficiary, the trustee has received to himself a profit; as when he has sold property for one price and accounted to the corporation for a less price, or has bought at one price and sold to the company at a larger one, or has received a secret bonus or advantage in the transaction in which he has acted for the corporation. Here, if the sale to O'Connor was indefeasible, Tenison did not afterwards act for the corporation, and hence the decision of the case must ultimately depend upon the questions first discussed.

The trial court did not submit to the jury all the questions of fact raised by the evidence, the decision of which was essential to a correct disposition of the case, and further issues should, upon the request of defendant, have been submitted.

The other facts which there was evidence tending to establish were that a quorum of the board of directors uninterested in the proposed trade, except for the corporation, fairly and honestly represented it in making the sale; that Tenison did not represent or assume to represent it, but disclosed to the board all facts within his knowledge affecting the advisability of making it, and took no advantage of his position as director and agent; and that the sale was for the value of the land in its

then condition and beneficial to the bank, and that Tenison obtained no· undue advantage in the trade. If all these facts should be established, the burden being on Tenison to sustain the trade by establishing them, we think the sale should be held valid and binding on the corporation.

We can not hold, however, that the evidence so clearly established them as to justify this court in rendering judgment for the plaintiff in error. We have detailed some of the evidence, merely to show that it tended, under our view of the law, to establish a defense.

With regard to the excess of 50 acres in the tract sold, it is enough to say that if the trade made upon the belief on both sides that there were only 640 acres is otherwise sustained, the mistake as to quantity would not render it fraudulent so as to avoid it under the principles discussed. Whether or not there would be rights such as often grow out of mistakes as to quantity in sales of land is a question not presented.

We shall not protract this opinion by discussing in detail the assignments of error. What we have said will be sufficient to govern another trial upon the principal issues of the case. As to what allowances and credits Tenison may be entitled to in case he should be charged as trustee, we can not now undertake to determine. His showing on this subject was entirely too indefinite to require notice from the court when dealing with him as trustee.

The judgments of the Court of Civil Appeals and of the District Court will be reversed and the cause remanded.

*Reversed and remanded.*