Rex F. TODD, Appellant,

v.

SOUTHLAND BROADCASTING COM-
PANY, Lester Kamin, Billy B. Gold-
berg and Pat Coon, Appellees.

No. 15536.

United States Court of Appeals
Fifth Circuit.

March 20, 1956.

Rehearing Denied April 30, 1956.

B. Jeff Crane, Jr., Ben H. Rice, III, Vinson, Elkins, Weems & Searls, Houston, Tex., for appellant, Rex F. Todd.

Gaius G. Gannon, Jr., Gaius G. Gannon, Houston, Tex., for appellees.

Before TUTTLE, CAMERON and JONES, Circuit Judges.

JONES, Circuit Judge.

The appellant, Rex F. Todd, is a citizen of Louisiana. The appellee, Southland Broadcasting Company, is a Texas corporation. The other appellees, three individuals, Lester Kamin, Billy B. Goldberg, and Pat Coon, are citizens of Texas. Plaintiff sues as a stockholder of and on behalf of Southland Broadcasting Company charging mismanagement and misfeasance of the individual defendants in the operation of the Company. Federal jurisdiction is dependent upon diversity of citizenship. Doctor v. Harrington, 196 U.S. 579, 25 S.Ct. 355, 49 L. Ed. 606. The individual parties will be sometimes designated by name and the corporate appellee will be sometimes referred to as Southland.

Southland was incorporated in 1947 with 1500 shares of common stock of the par value of $5 per share. Joe Darsky subscribed for 765 shares. The other stock was originally acquired by Kamin, Goldberg, and Coon. The Darsky stock was surrendered to Southland in 1949. Southland had two permits from the Federal Communications Commission to construct radio stations, one, WMRY, at New Orleans, and another, KCIJ, at Shreveport. Frequency Broadcasting System, a corporation which had been promoted in large part by appellant and of which appellant's wife was a substantial stockholder, had applied for a permit to erect and operate a radio station at Shreveport. The permit was not granted. The appellant purchased 399 shares of Southland treasury stock. It was then contemplated that Frequency would build station KCIJ for Southland with funds of Frequency, and that Southland would transfer KCIJ to Frequency in consideration of 500 out of a total of 1500 shares of Frequency's stock. These 500 shares, it was understood, were to be distributed to Kamin, Goldberg, and Coon, and that the interest of appellant and his wife in KCIJ would inure from a stock ownership in Frequency rather than through Southland.

WMRY in New Orleans was completed and put in operation in January of 1950. KCIJ went on the air in April, 1950. At the outset it sustained operating losses. The Federal Communications Commission delayed action upon the application for the transfer of the Shreveport station from Southland to Frequency. The appellant, a resident of Shreveport, spent considerable time assisting in the operation of KCIJ. In September of 1951, the stockholders and directors of Southland, of whom appellant was one, met to consider the condition of KCIJ. At this meeting it was proposed and a resolution of the stockholders directed that the effort to procure a permit for the transfer of KCIJ to Frequency be abandoned. Then a resolution was adopted in which it was recited that when appellant purchased his Southland stock the contract for the transfer of KCIJ had been made and hence Southland would own only one station, WMRY, but if Southland retained KCIJ it would own two stations. The resolution provided that, if the Federal Communications Commission permitted the withdrawal of the application for transfer, Kamin, Goldberg, and Coon would endorse the corporation's note for $13,300 "and in consideration therefor" the appellant agreed to pay $9,300 into the treasury of Southland "as further consideration for the capital stock purchased by him" and the appellant would lend $4,000 to Southland. It was further resolved that each of the four principal stockholders would evidence his acceptance of the proposal by a letter to the corporation. At this meeting another resolution was adopted reciting that salaries of officers had been set up but the financial circumstances made it inadvisable that they be paid or carried on the books and such salaries were "stricken from the books and records".

By this resolution it was "mutually agreed between the stockholders" that officers and directors receive no salary or compensation for services until Southland's debts become liquid and current "unless this is changed by a vote of all of the stockholders". Appellant testified that there was a discussion of the possibility of Southland going into bankruptcy.

In November of 1951, Kamin went to Shreveport and while there the appellant wrote and signed a letter in compliance with the resolution relating to his proposed advances to the corporation. The terms of the letter were dictated, so appellant testified, by Kamin, and signed by appellant acting, so he said, under a threat of Kamin that if appellant didn't "go along with their way on the thing he [Kamin] would see that I [appellant] never got a dime out of it". In the letter, which was written during the latter part of November, 1951 and directed to Kamin as President of Southland, it was provided that the appellant would pay $4,000 into the treasury of Southland in the form of a loan, and would pay $9,300 for 399 shares of Southland stock in three semi-annual payments beginning March 1, 1952, if needed. In the event the money was not needed the $9,300 should be deducted from any dividends due and owing to appellant. The appellant testified that at this meeting Kamin told him that the money wouldn't be needed right away. About this same time, perhaps as a part of the same transaction, Southland bought from J. E. Wharton his Southland stock, 177 shares, of which 150 shares had been purchased for $5,000 and 27 shares had been issued for services as a radio engineer. The price agreed upon for the resale to Southland was $20,000, of which $5,000 was paid at the time of the deal. Soon after appellant had given the letter to Kamin, perhaps within a week or two, Kamin telephoned appellant and asked him to put up the money as agreed. Appellant did not make the loan as he had agreed by letter. This refusal was followed by

a letter from Goldberg, then Secretary of Southland, to appellant saying that the manager of KCIJ was being advised that appellant had not purchased and did not own any interest in KCIJ and that the manager would be expected to receive his orders from Kamin, then President of Southland. Thereafter appellant did not participate in the operation of KCIJ.

In October 1952, the appellant stated that the agreement regarding KCIJ was made under duress and he would not comply with it. A new Board of Southland was elected, not including appellant. The minutes of an October 25, 1952, meeting of the Board of Directors recited a statement of the President that the affairs of the corporation had been and were being managed by a Management Committee of Kamin, Coon and Goldberg, each of whom was voted a salary of $7,200 for the year 1952. In February 1953, at a stockholders' meeting a resolution was adopted upon the votes of Kamin, Goldberg and Coon, by which it was provided that Southland should seek Federal Communications Commission approval of a transfer of KCIJ to a new corporation to be wholly owned by Kamin, Coon and Goldberg. The appellant, Southland's only other stockholder, voted by proxy against the proposal. The appellant filed suit the following month, March 1953, seeking an injunction against the transfer of Radio Station KCIJ to Kamin, Goldberg and Coon, or to a corporation formed by them, or otherwise except for a full consideration and with the approval of eighty per cent. of the holders of Southland stock. The appellant sought also an accounting from the individual appellees of their transactions with the corporation.

Much testimony was taken at the trial. It appeared that separate accounting records were kept for each of the two radio stations and a considerable number of cross-entries between the accounts of the two stations were made on the corporation's books from time to time. On one occasion $20,000 was borrowed for income tax payments and charged to KCIJ. The accounting and cross-ac-

counting as between the two stations is confusing. That the Certified Public Accountant who audited Southland's books was not wholly free from this confusion is indicated by his response to a question put by the Court regarding the above-mentioned $20,000 borrowing. The witness, Earl F. Walborg, said:

"Well, I put down my explanation here. The way I see it, the intention of this entry is apparently to infer that Station KCIJ made a loan of $20,000 at WMRY's bank, the Progressive Bank, in New Orleans, and deposited the funds to the WMRY bank account. Actually, the loan liability was and is recorded on the WMRY books".

The payments made on the Wharton stock, something over $15,000, were originally credited to KCIJ, later transferred to WMRY. On one occasion the accountant said that if WMRY and KCIJ had separate books, as distinguished from separate accounts in the same set of books, each would have been out of balance by $20,000. The corporation began making money early in 1952. In that year Southland had earnings before Federal income taxes and officers' compensation of $67,750. In 1953 the comparable figure was $68,814. Salaries and bonuses to Kamin, Goldberg and Coon were paid or accrued for 1952 in the amount of $21,600 and for 1953 in the amount of $36,000. Advances were made, from time to time, of Southland's funds, to John H. Pace, Manager of KCIJ. It is indicated that some of these funds were to be used for promoting television stations to be owned, in whole or in part, by the individual appellees in competition with Southland and in which neither appellant nor Southland would have any interest.

The court made findings of fact and conclusions of law. The basic finding was that appellant understood at the time of his acquisition of Southland stock that station KCIJ was to be the individual property of Kamin, Goldberg and Coon, free and clear of any claim of Southland. It was found that in 1951 the financial affairs of KCIJ were desperate, that resolutions were adopted providing that if appellant did not evidence his acceptance of the prior resolution in writing, KCIJ should be transferred to a new corporation to be wholly owned by Kamin, Goldberg and Coon. There are findings that appellant is in default, that salaries paid to the individual appellees were fair and reasonable, that beginning with the first of the year 1952 the obligations of KCIJ were current and liquid. As matters of law the court concluded that appellant was wholly without equity, and judgment was entered denying appellant any relief. The court determined that Kamin, Goldberg and Coon were the beneficial owners of KCIJ, and, upon approval of the Federal Communications Commission, it should be transferred to the individual appellees or to their nominee.

If there be an acceptance of the underlying finding of fact that the beneficial ownership of station KCIJ was vested in the individual appellees, Kamin, Goldberg and Coon, then perhaps Rule 52, Fed.Rules Civ.Proc. 28 U.S.C.A. would require an affirmance. But we are convinced that the basic finding was clearly erroneous. We find, on the part of the individual appellees, a piercing of the corporate veil and a disregarding of the corporate entity that can be sustained only by an agreement of all of the stockholders. At the time the appellant acquired his stock in Southland there was an agreement that, if the Federal Communications Commission approved, station KCIJ would be transferred, not to Kamin, Goldberg and Coon or their nominee, but to Frequency, of which appellant's wife was a stockholder. For KCIJ, Southland was to receive one-third, or 500 shares, of the stock of Frequency for distribution to the three individual appellees. The September resolution, adopted by the vote of the individual appellees, as majority stockholders of Southland, recited that KCIJ needed additional capital immediately. It was resolved that the request for the transfer be withdrawn and that appel-

lant should pay $9,300 as further consideration for his stock and lend the company $4,000.

Appellant voted against the resolution. His acquiescence in the resolution by the letter would have the same effect as if he had voted for it unless, as he contended, his letter acceptance was induced by duress. However, the appellant did not vote for or acquiesce in the resolution thereafter adopted that if appellant did not perform, station KCIJ would be transferred to a corporation wholly owned by Kamin, Goldberg and Coon.

■ At the time of the meeting in September, 1951, the appellant was a stockholder of Southland and, although a minority stockholder he was the owner of more of its shares than any other stockholder. Station KCIJ was not the property of the individual appellees. It was owned by and an asset of Southland. It was subject to the agreement that it should be transferred to Frequency if the required governmental approval was given. There was no agreement, to which the appellant gave assent, that in any event or upon any condition should station KCIJ be the individual property of Kamin, Goldberg and Coon, or of a corporation wholly owned by them. The question has been raised as to whether there is a consideration for the appellant's agreement to make the loan and make a further payment for his stock. There was not only the undertaking of the individual appellees to guarantee loans to be made by others to Southland, but there was the action by them as directors and stockholders to withdraw the application for approval of the transfer of KCIJ to Frequency. We find a consideration for the agreement and shall not inquire as to its adequacy. It does not follow, however, that for a breach of the agreement the appellant should be subjected to a penalty of the forfeiture of his beneficial interest existing through his stock ownership, of the most valuable asset of the company of which he held thirty-nine per cent. of the stock. It is the law of Texas that:

"Forfeiture of rights or property by virtue of stipulations in contracts is regarded as forfeitures generally are—that is, with disfavor. If the language of an agreement is fairly susceptible of an interpretation which will prevent a forfeiture, it will be so construed, for in this case also a strict construction is favored." 19 Tex.Jur. 803, Forfeitures § 7.

Here, the appellant not only was not a party to any agreement but if there was any agreement for a forfeiture it was between the individual appellees and Southland, opposed by appellant, and which could not be effected without his assent.

■ There is still another reason why the individual appellees should not be permitted to divest Southland of station KCIJ for their own exclusive benefit. In accord with principles universally accepted, we find the law of Texas on the dealings between a corporation and its directors to be as follows:

"It has been said that no case can be found where a director has been permitted to deal personally with the corporation, or with his codirectors acting for it, where his vote was necessary to the action taken. On the other hand, there is authority to the effect that such contracts, when made with the efficient aid of the contracting director, are presumptively invalid, that they are subjected to the severest scrutiny, and set aside unless all appearance of bad faith is removed by the evidence. Even where the disinterested directors are a majority, and they vote the transaction, they cannot deal with the interested director as with a stranger, because of his intimate knowledge of the affairs of the corporation and his position to exercise influence over those associated with him in its management. While the transaction, if otherwise unassailable, is not void because interested directors constituting a minority

use their position for the purpose of advancing their own interests, any want of good faith, reflected in the unfairness of the transaction to the corporation, will render it voidable even though sanctioned by a qualified majority of the directors." 10 Tex.Jur. 959, Corporations, § 306. Cf. 13 Am.Jur. 955, Corporations, § 1002 et seq.

The foregoing rule has been well stated by the Texas Court of Civil Appeals in saying:

"All authorities so far as we know denominate the relation between a director of a corporation and the corporation itself, which is treated as a separate entity, a trust relation. In many of them, applying the principles of equity, it is held that he cannot deal with the corporation or other directors acting for it, when personally concerned, whether beneficial to himself or otherwise, on the broad ground that the corporation is entitled to the disinterested management and judgment of the director, and no rule will be permitted that might be productive of contrary results. While the rule has not been so broadly stated or applied in this state, as may be seen from an interesting discussion of the subject by Justice Williams of our Supreme Court in the case of Tenison v. Patton, 95 Tex. 284, 67 S.W. 92, yet we know of no case where a director has been permitted to deal with the corporation or his co-directors in his personal interest, where his vote was necessary to the action taken. Thus in the case cited (page 293 of 95 Tex., page 95 of 67 S.W.) it is said: 'The corporation is a separate entity, for which its board of directors acts. The persons having the beneficial interest in the property are the stockholders; but their rights are centered in the corporation, and are managed and controlled through the board of directors as the active representatives of the company, and it is through it,

and not the stockholders, that business dealings are carried on. When a personal interest of one of them springs up adverse to that of the corporation, it disqualifies him to act concerning it as one of the representatives or agents.'" Greathouse v. Martin, Tex.Civ.App., 91 S.W. 385, 386, affirmed 100 Tex. 99, 94 S.W. 322.

Again it is said:

"It is a wholesome and thoroughly settled rule that a director of a private corporation cannot vote, with propriety, in a matter affecting his private interest, any more than a judge can sit in his own case. * * * And, when he violates this rule of propriety, and enters into a contract with the corporation, especially a contract of purchase of corporate assets, and his vote as a member of the board is necessary to the passage of the resolution authorizing it, this action of the board is sometimes void, and in all cases voidable, at the instance of the corporation, or of its stockholders, or of its injured creditors." Texas Auto Co. v. Arbetter, Tex.Civ.App., 1 S. W.2d 334, 337.

Such being the rule, the three individual appellees, as directors, could not take from the corporation one of its principal assets and divert it to themselves in its entirety merely because they were unable to get prompt approval for the transfer to Frequency of which they were to own but a third of the stock.

The individual appellees, as directors, with the concurrence of appellant as a director, cancelled all accrued compensation to officers and directors in September, 1951, and provided that none should be paid until the debts of Southland became liquid and current. They dropped appellant from the board in October, 1952, and forthwith voted themselves $7,200 each for compensation as members of the Management Committee. These payments were for the year 1952, a period of which nearly five-sixths had

expired when the resolution purporting to authorize it had passed. For 1953 the $7,200 annual payments to each were continued and for that year they voted each of themselves a $4,800 bonus. There was no formal authorization by the directors of the creation of a Management Committee. It was merely the majority stockholders giving themselves a name under which they would operate without their minority stockholder. All of the individual appellees are residents of Houston, Texas. The two radio stations are in Louisiana. The President of Southland, Lester Kamin, operates an advertising agency in Houston. The Secretary and Treasurer, Billy B. Goldberg, maintains a law office in that city. It appeared from the testimony of Mr. Goldberg, the only one of the individual appellees who testified, that Kamin, Coon and himself had organized a corporation which had applied for a television permit to operate with the WMRY tower of Southland under an agreement which they, as directors of the new corporation, would negotiate with themselves as directors of Southland.

The trial court found that "In the light of the services performed, the revenues obtained and the net profits made, the salaries paid to the management committee were entirely fair and reasonable and not excessive." The first compensation which the individual appellees took from the corporate treasury as compensation for their services was the $7,200 paid to each for 1952. These payments were for a period retroactive to the beginning of the year. Such payments have the disapproval of the Texas courts. The Texas Court of Civil Appeals has held:

"An increase in salary, or additional compensation, or back salary, or pay—a bonus—may not be voted to a director or directing officer of a corporation, when the vote of the beneficiary himself is necessary to the adoption of the proposition." A. J. Anderson Co. v. Kinsolving, Tex. Civ.App., 262 S.W. 150, 152.

This court has had occasion to declare the same doctrines and has said:

"We need not write extensively on the legal principles governing the voting of bonuses, that is increased compensation for services already rendered gratuitously or for a prescribed compensation, where there is neither express or implied understanding that additional compensation may be granted. They are well settled and well known. Under well established principles of corporation law, directors and officers are quasi-trustees for the corporation and the stockholders, they hold office under an implied obligation to serve them faithfully, they may take no personal advantage of their possession of power. As to bonuses, which are merely gratuitous payments, and as to similar retroactive increases of salary, it is Hornbook law that, except where there has been an express or implied understanding that they may be granted if conditions warrant, there is no consideration for them, and their grant by the directors alone will not sustain them against attack by stockholders. It is true that normally the stockholders may grant them or ratify their granting. Even they may not do so, however, with the purpose or the result of overreaching or working a fraud or imposition on the corporation, the minority stockholders or other unprotected interests. It is sufficient for the purpose of this case to say: that gratuitous bonuses and additional compensation granted by directors for services already rendered under fixed salaries are normally without consideration in law; that they are, therefore, suspect and will be readily upset unless their propriety is made clearly to appear; that where, as was the case here, in respect of the additional compensations awarded retroactively in June, 1943, the fact that the directors who voted them were also

owners of all the common stock will not save them from attack; and that they will be disallowed if it is made to appear that either their purpose or their result has been not to award reasonable compensation for services, but to impose upon or overreach preferred stockholders." Hurt v. Cotton States Fertilizer Co., 5 Cir., 1947, 159 F.2d 52, 58.

The amount of the payments made to the individual appellees for that portion of the year 1952 prior to October 25, 1952, should be restored to the corporation. The same is true as to all other retroactive bonuses. The appellee, Billy B. Goldberg, outlined in some detail the activities of himself and the other individual appellees during the time of the organization and promotion of Southland prior to 1952. There is much less information for the subsequent period. It was his testimony there was a station manager at both stations and the "management committee", so called, handled the "top management", the "long-range short range policy decisions" and was the "sole managing entity within the corporation". As a guide to our decision, we again turn to the law of Texas as pronounced by its courts. The Supreme Court of that State had occasion to consider a case where a stockholder had brought suit on behalf of a corporation against Martin, the corporate treasurer, whose salary was fixed by the Treasurer's vote as a member of the board of directors. It was held:

"Where the proof showed that the action of the board of directors was not binding upon the corporation, the plaintiff was entitled to recover from Martin the money which had been paid to him under that invalid order, unless Martin could show himself entitled to retain it by reason of the fact that he had performed valuable services to the corporation for which he would be entitled to just compensation." Greathouse v. Martin, 100 Tex. 99, 94 S. W. 322, 324.

The burden of proof was upon the individual appellees to show that they were entitled, as on a *quantum meruit*, to the compensation which they drew.

 We think the individual appellees must make a full accounting of all of the transactions of the corporation made with them or for their benefit or with any corporation or other entity in which they had an interest. All such transactions should be the subject of full disclosures and careful scrutiny. Accountings should not be based upon apparent inferences.

For further proceedings consistent with this opinion, the judgment appealed from is

Reversed and remanded.