**Lawrence Samuels STOVALL et al.,**
Appellants,

v.

**SAMUELS GLASS COMPANY et al.,**
Appellees.

No. 13744.

Court of Civil Appeals of Texas.

San Antonio.

May 17, 1961.

Baskin, Casseb & Gilliland, San Antonio, for appellants.

Bobbitt, Brite, Bobbitt & Allen, Park Street, Walter Powell Gray, Hugh J. Fitz-Gerald, James K. Gardner, Max Wier, San Antonio, for appellees.

POPE, Justice.

Lawrence Samuels Stovall and Hazel Stovall Lander, joined by her husband, sued Samuels Glass Company, a corporation and the rest of its stockholders, for specific performance of a stock option contract. Both plaintiffs and defendants moved for summary judgment, and after plaintiffs abandoned all their actions except their relief by way of specific per-

formance, the court granted defendants' motion. Plaintiffs have appealed.

Samuels Glass Comany is a private corporation with six hundred shares of stock authorized and issued. All shares are owned by the Samuels family. On March 8, 1949, all the stockholders, except the two plaintiffs who were then minors and owners of twenty-five shares each, entered into a stock option agreement. They did this to assure family control of the company. The contract provided:

"It is expressly agreed that during the life of this contract, none of the owners of stock of the Samuels Glass Company will, without the written consent of the holders of the majority of its stock, pledge or in any way encumber any of its stock now standing in their names or hereafter acquired by them, but any stockholder shall have the right at any time to transfer any of his or her stock to any member of his or her family, or to sell same, or any part thereof, provided that should any stockholder desire to sell any or all of his or her stock, he or she shall give the Samuels Glass Company notice thereof in writing, and the Samuels Glass Company shall have thirty (30) days option to purchase same at the book value thereof, and should said corporation not desire to purchase same, its surviving stockholders shall have the right to buy it at the same price, on a pro rata basis, and if all of said stockholders do not desire to purchase it, those so desiring may purchase same on a pro rata basis, provided their option to purchase is exercised within thirty (30) days from the expiration of the corporation's option."

The same instrument provided, "This contract shall extend to and remain in full force and effect until March 1, 1959, and shall be binding upon the heirs, executors or assigns of the parties hereto, but may be altered, changed or terminated by the written agreement of the holders of the majority of the stock of the Samuels Glass Company."

During 1956, the heirs of Ray Samuels expressed a desire to dispose of two hundred shares of stock.[1] At that time plaintiffs, who are brother and sister, and children of defendants A. W. and Jane Stovall, were minors. Jane Stovall, their mother, held their stock as trustee for them. On January 9, 1956, at a directors' meeting, with all directors present, G. L. Samuels reported that one of Ray Samuels' heirs offered to sell twenty-five shares to the corporation. G. L. Samuels was asked to determine if others would also sell. On June 27, 1956, as appears from the minutes of a directors' meeting, all 200 shares were offered to the corporation for a price of $1,100 per share. The book value of the stock was $1,500 per share. The directors unanimously adopted a resolution authorizing G. L. Samuels to offer to buy from Ray Samuels' heirs all the 200 shares at $900 a share. G. L. Samuels, L. M. Samuels, A. W. Stovall and Perry Samuels, each signed the minutes embodying the resolution. Those parties individually owned a total of three hundred shares of stock. On July 19, 1956, the owners of the 200 shares, by a letter signed by each owner, accepted the offer. On August 2, 1956, the directors of the corporation again met, approved the previous minutes, and the president, G. L. Samuels, reported that the 200 shares had been bought in accord with the previous resolution.

Plaintiffs by their suit claim that the stock option agreement accorded the corporation first opportunity to buy the 200 shares at book value, that being $300,000.

1. The stock in the corporation was then owned as follows:

| | |
|---|---|
| Ray Samuels' Heirs | 200 |
| G. L. Samuels | 120 |
| Perry Samuels | 80 |
| L. M. Samuels | 50 |
| A. W. Stovall | 50 |
| Jane Stovall | 50 |
| Lawrence S. Stovall | 25 |
| Hazel Ruth Stovall | 25 |

Failing to exercise its option, plaintiffs assert that they then had the right to buy the stock at book value. They complain because they were not accorded that right. Lawrence became of age on December 30, 1957, and his sister became of age on July 1, 1958, upon her marriage. Up to the time they attained their majority, their mother, Jane Stovall, acted as trustee over the stock of her children, under an express trust executed by her father, L. M. Samuels. When they became of age they claimed their right to buy the stock at book value.

The trial court properly granted defendants' motion for summary judgment. Plaintiffs rely upon the terms of the stock option contract, but a part of that same contract is the provision that the contract may be changed by the written agreement of a majority of the stockholders. In our opinion, the part of the contract upon which plaintiffs rely was effectively changed as permitted by the provisions of the agreement. The directors for Samuels Glass Company met on June 27, 1956, and unanimously adopted a formal written resolution to offer $900 per share for the 200 shares of the Ray Samuels family. See Schlens v. Poe, 128 Md. 352, 97 A. 649, 656. All of the directors then signed the minutes. The signing directors owned 300 shares. We pass over this document, however, since the directors were acting as officials and not as individual stockholders. The members of the Ray Samuels family, however, in a detailed letter dated July 19, 1956, stated the terms of their agreement in accepting $900 per share from the Samuels Glass Company. The corporation closed the trade upon the basis of the letter embodying the agreement. Thereafter on February 14, 1957 the stockholders met. At that time the 200 shares had been bought and were held as treasury stock by the corporation. At the stockholders' meeting, 375 shares of stock were actually represented and voted. That was more than a majority. At the meeting a motion was made, seconded and unanimously approved that the stock purchase by the corporation "be and it is hereby in all things ratified, confirmed and approved." The majority of the stockholders, in ratifying the contract, changed the stock option contract, as permitted by that contract. Tenison v. Patton, 95 Tex. 284, 67 S.W. 92; 19 C.J.S. Corporations § 1017; 5 Fletcher Cyclopedia Corporations, (Perm. Ed.) § 2106.

If, therefore, the original stock option contract required the corporation to pay the book value for the stock, or offer the stock to plaintiffs at book value, a point we do not decide, nevertheless, a majority of the stockholders agreed that the corporation could purchase the stock at less than book value; and the original stock option contract permitted a majority of its stockholders to alter, change, or terminate the original agreement. Couch v. Southern Methodist University, Tex.Com.App., 10 S.W.2d 973.

The summary judgment for the defendants is affirmed.