**STATE NAT. BANK v. DAVIDSON et al.**
**(No. 259.)**

Court of Civil Appeals of Texas. Eastland.
April 15, 1927.

Motion for Rehearing Overruled May 20, 1927.

1. **Banks and banking** ⚫54(1)—Bank directors are trustees, whose acts respecting corporate property are subject to law of trusts.

Directors of bank are trustees, whose acts relating to the corporation's property are controlled by the principles governing other trustees.

2. **Banks and banking** ⚫54(1)—Act of bank directors in transaction with board member must be approved with knowledge of facts by majority uninterested, as beneficial to bank.

Act of board of directors of a bank respecting a transaction between the bank and one of their number must be approved with knowledge of all material facts by a majority of the board uninterested, and must be beneficial to the bank as it then appeared.

3. **Corporations** ⚫297—Board cannot release member director from liability to corporation for indirect misappropriation of corporate assets.

Board of directors is without power to release one of their number from liability to corporation for indirect misappropriation of corporate assets to his benefit.

---

⚫For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Appeal and error ⬡➾1062(5)—Submitting immaterial issues is harmless, if material findings are sufficient to support judgment.**

Submitting immaterial issues in bank's suit on note is not reversible error, if, discarding immaterial questions submitted, there remain sufficient material findings of fact to support judgment.

**5. Trial ⬡➾352(1)—Special issue on ratification requiring finding that directors knew all facts is incorrect, since knowledge of material facts is sufficient.**

Special issue requiring jury to find board of directors knew all facts at time of ratification was incorrect, since ratification may be predicated on knowledge of material facts.

**6. Trial ⬡➾256(1)—Plaintiff desiring instruction on special issue amplified should request charge.**

Where an instruction submitted issue as contended for by plaintiff bank, it devolved upon it to request correct charge if it desired the matter further amplified.

**7. Appeal and error ⬡➾1062(1)—Refusal to limit issue held not error, where under jury's finding on another issue, appellee would be entitled to judgment.**

Court's refusal to limit to one directors' meeting the issue of directors' ratification of president's substitution of other notes for note of copartnership, of which, as a former member, he was liable, held not error, where jury found that directors intended by later renewal of substituted notes to release him; the appellee being entitled to judgment on the finding.

**8. Trial ⬡➾365(2)—Failure properly to limit certain issues to proper dates is not prejudicial where charge as whole conveys correct understanding.**

Failure to limit certain special issues to appropriate dates is not prejudicial error, where charge taken as a whole must have given jury correct understanding.

**9. Executors and administrators ⬡➾450—Testimony that bank directors would not have consented to substitution of notes had they known facts held improperly excluded in suit on original note.**

Where bank directors agreed to substitution of notes of others for note on which one of their members was liable, testimony in bank's suit against that member's estate on original liability, that two of directors would not have agreed to the substitution had they known material facts, was improperly excluded.

**10. Appeal and error ⬡➾1058(2)—Rejecting admissible negative testimony was harmless, where same witnesses testified positively to matter of same effect.**

Rejection of admissible testimony negative in character was harmless error, where the same witnesses were permitted to testify positively to matter having the same but a stronger effect.

**11. Evidence ⬡➾317(1)—Defendant administrator's testimony of his conversation with bank president relating to bank's claim against estate held not hearsay in suit thereon.**

Defendant administrator's testimony of conversation with bank president, subsequent to intestate's death, that two directors were pressing bank's claim against estate, was not hearsay in bank's suit thereon.

**12. Appeal and error ⬡➾970(1)—Discretion in permitting defendants to use on their defense books read by them in cross-examination would not be reviewed in absence of clear abuse.**

In bank's suit against estate of its deceased former president and his former partners on alleged liability as copartners, the action of the court in permitting defendants, after reading from bank records in cross-examination, to read from same records in making out their defense, was not reviewable in absence of clear abuse of discretion.

**13. Witnesses ⬡➾159(12)—Deceased bank president's former copartners in automobile business could testify of partnership's dissolution in bank's suit on partnership debt (Rev. St. 1925, art. 3716).**

Former copartners in automobile business of one who was also president of plaintiff bank, at time of copartnership's note to bank, could testify of dissolution of partnership, in bank's suit against deceased's administrator and themselves on original note, for which other notes had been substituted during deceased's lifetime; notwithstanding Rev. St. 1925, art. 3716, providing that in certain cases parties may not testify to transaction with deceased.

Appeal from District Court, Palo Pinto County; J. B. Keith, Judge.

Action by the State National Bank, substituted for the First State Bank & Trust Company of Mineral Wells, against W. A. Davidson, William Frost, administrator of the estate of H. N. Frost, deceased, and another. From a judgment for the defendants last named, the plaintiff appeals. Affirmed.

Gross & Gross, of Mineral Wells, Stephens & Stephens, of Fort Worth, for appellant.

Goree, Odell & Allen, of Fort Worth, and W. P. Smith, Jno. W. Moyers, and Penix, Miller & Perkins, all of Mineral Wells, for appellees.

PANNILL, C. J. This is the second appeal. The opinion in the first will be found reported as First State Bank & Trust Company v. Davidson et al. (Tex. Civ. App.) 260 S. W. 922, and Frost et al. v. First State Bank & Trust Co. (Tex. Com. App.) 276 S. W. 222. Upon the second trial, judgment was again entered in favor of Frost, administrator, and Llewellyn, from which this appeal is prosecuted. After the first trial appellant changed its name and procured a new charter. The facts are in no material respect different

---

⬡➾For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

from those presented on the former appeal, and the statement made by the Court of Civil Appeals is referred to as being sufficient, except as otherwise indicated.

The appellant vigorously asserts that at the trial from which the instant appeal was taken, the learned trial judge did not submit the case in the manner as directed by the appellate courts, and the points presenting this complaint will be hereinafter discussed.

The Court of Civil Appeals on the former appeal conceived the vital question in the case to be whether the directors on May 4, 1920, intended to release Frost and Llewellyn and remanded the case for trial of that issue. However, strong intimation was made that the directors were without power to release Frost.

The Supreme Court granted a writ of error, and the commission remanded the case with instructions to submit to the jury the issue of the intention of the directors to release Frost and Llewellyn at the time of the approval of the notes substituted for the $11,000 note, or of any renewals of such substituted notes, and further held that the evidence was sufficient to support a finding either way on the question of intention. Distinguished counsel for appellants press for our consideration the authorities cited in the opinion of the Court of Civil Appeals on the former appeal, and assert that the facts found and the release pleaded are insufficient to relieve Frost from liability because of his trusteeship for the bank. If the question of Frost's liability on the Davidson note, taken in part substitution for the $11,000 note above described, was open for decision, we would experience great difficulty in deciding that the directors of the bank could release one of their members from his liability by taking the notes of one already liable for the debt, when such action did not appear to be beneficial to the bank, but at most was of doubtful propriety. Under the authorities, the only circumstance that could possibly uphold such a transaction would be the chattel mortgage taken on the automobiles. Their value is not shown, nor whether they were exposed for sale at retail. If the latter, the mortgage would furnish scant security. First National Bank v. Thompson (Tex. Com. App.) 265 S. W. 884.

[1] The authorities seem to hold that the directors of a bank are trustees and their acts relating to the corporation's property are controlled by the principles governing other trustees. San Antonio & G. S. Ry. Co. v. S. A. & G. Ry. Co., 25 Tex. Civ. App. 167, 60 S. W. 338 (writ refused).

[2] Therefore, in order for the act of a board of directors, dealing with a transaction between the corporation and another of their number, to be valid, not only must the transaction be approved by a majority of the board uninterested and with knowledge of all material facts, but the transaction must be beneficial to the bank as it then appeared. Tenison v. Patton, 95 Tex. 284, 67 S. W. 92; U. S. Fidelity & Guaranty Company Company v. Adoue, 104 Tex. 379, 137 S. W. 648, 138 S. W. 383, 37 L. R. A. (N. S.) 409, Ann. Cas. 1914B, 667.

[3] A board of directors is without power to release one of their number from his liability to the corporation for the indirect misappropriation of the assets of a corporation to the use of the director sought to be released. Cook on Corporations (8th Ed.) vol. 4, § 730, p. 3135.

If the act of the directors in dealing with Frost's liability should be placed on the same plane as though he were a stranger to the bank, there would be no difficulty in agreeing with the view of the commission that the evidence is sufficient to show that the board had prior to April, 1921, ceased to look to either Frost or Llewellyn for the debt in question. It appearing to us that it is the view of the Supreme Court that the liability of Frost and Llewellyn is to be determined by the rule last referred to, therefore our limited duty is to determine whether the learned trial court substantially followed the instructions of the Supreme Court in retrying the case.

The case was submitted to the jury upon 14 special issues, all of which were answered in the affirmative and established the following state of facts: That a majority of the directors, other than Frost, in session after March 30, 1920, accepted the note of Davidson and Armstrong in settlement of the balance due on the $11,000 note of the Davidson Motor Company, intending to release Frost and Llewellyn, and thereafter, on April 5, 1921, accepted renewals of the substituted notes, with the intention to release the parties last named; that after March 30, 1920, said majority knew that Frost and Llewellyn had retired from the partnership in question; that Frost agreed to release Llewellyn and intended to do so in the transactions heretofore referred to; that by custom and business dealings, Frost and his successor, W. I. Smith, possessed authority to loan the moneys of the bank and change the form of obligations and the securities thereof; that Llewellyn believed that Frost had authority to release Llewellyn; that Smith, successor to Frost, knew, either before or after he was president, that Frost and Llewellyn had retired from the firm named; that Smith accepted the renewals on the Davidson and Armstrong notes, intending to release Frost and Llewellyn from the $11,000 note of the Davidson Motor Company; that Smith, as president and also the directors, in filing suit on the note into which the Armstrong note had been merged, intended to release Frost and Llewellyn from the $11,000 note of the

Davidson Motor Company to the extent of the amount of $2,280, the amount of the Armstrong note.

No issue was submitted as to the loans made by Frost after the dissolution of said partnership, which loans were represented by the notes for $2,534.85 and $3,683.75.

[4] Numerous exceptions were taken to the special issues submitted; a number of special issues and instructions were requested, and other rulings challenged, and, in support of the objections made, 24 propositions are presented. Most of the objections to the issues submitted are that they are immaterial. These objections can be eliminated, for, if, discarding immaterial questions submitted, there remains sufficient material findings of fact, no reversible error would appear.

Objection was lodged to the issue submitting the issue of approval by the directors of the renewal notes and to the failure to give appellant's requested issues confining the issue of ratification to the directors' meeting of May 4, 1920. What has been said disposes of this complaint.

The opinion of the commission plainly held that ratification could be predicated upon any renewal of the debts under consideration. Appellant seriously insists that this is a departure from the rule generally declared by the previous decisions of the Supreme Court, and that it is a dangerous innovation in the law to permit a board of directors to release one of their number from his liability for money borrowed by him from the bank and substitute the sole liability of an insolvent person already bound. If this is the effect of the decision, recourse must be had to the Supreme Court, for, as stated, the opinion of the commission so plainly directed.

The opinion of the commission referred to held that defendant was entitled to an instruction calling the jury's attention to the liability of Frost and Llewellyn at the time they retired from the firm, and defining what the law requires to constitute "novation." To procure the advantage of this holding, appellant requested a special charge, informing the jury that Frost and Llewellyn remained liable after the dissolution noted; that Frost could not release either himself or Llewellyn; that the question to be determined was whether the appellant ratified Frost's act in attempting the release, and that in deciding this question it was incumbent upon appellees to show that in the action taken in the May meeting the board of directors acted with full knowledge of all the facts; that is, they knew, not only of the dissolution of the partnership, but the terms thereof, and with such knowledge intended to ratify the attempted release. This preliminary instruction was followed by an issue submitting the question of ratification at the May meeting. The submission of the same issue, without the preliminary statement, was asked in a separate request.

[5] The first special issue requested and stated in substance above was incorrect, in that it required the jury to find that the board knew all the facts and all the terms of the dissolution. Ratification may be predicated on an acceptance with knowledge of material facts. Davis v. Nueces Valley Irr. Co., 103 Tex. 243, 126 S. W. 4.

[6, 7] The court, in the issues submitted, clearly assumed the liability of appellees until released at a meeting of the board subsequent to March 30, 1920. This, in part, submitted the issue as contended for by appellant; it then developed upon appellant to request a correct charge if it desired the matter further amplified. The refusal to limit the issue of ratification to the May meeting cannot operate to the prejudice of appellant, inasmuch as the jury found in appellee's favor on the issue of an intention to release by accepting the renewals on April 5, 1921. Even if the jury had found in appellant's favor on the issue of an intention to release at the May meeting, appellees would still be entitled to judgment under the decision of the commission on the finding of an intention to release by accepting the renewals on April 5, 1921.

Serious questions are presented with reference to the issues submitted as to the knowledge held by the board of directors and Smith, vice president, of the dissolution of said firm, and also the failure of the court to submit the issue of appellee's liability on the loans made by Frost to Davidson after such a dissolution. The issues submitted and now being considered are:

"Special Issue No. 7. Did a majority of the directors of the First State Bank & Trust Company, other than H. N. Frost, who participated in the directors' meeting for said bank, subsequent to March 30, 1920, know that H. N. Frost and J. C. Llewellyn had retired as partners from the Davidson Motor Company?" Answer: "Yes."

"Special Issue No. 10. Did W. I. Smith, either before or at the time he was president of the First State Bank & Trust Company, know that H. N. Frost and J. C. Llewellyn had retired from the Davidson Motor Company as partners?" Answer: "Yes."

[8] These issues were objected to on the ground that an affirmative answer could be predicated on knowledge acquired after the filing of the suit. These issues and the answers considered above mean nothing. It is undisputed that after March 30, 1921, the directors did learn of the dissolution. They certainly learned it, when appellee's answer was filed, if not before. Their knowledge should at least have been restricted to not later than April 5, 1921. The finding that Smith learned of the dissolution, either before or after he became president, is subject to the same criticism. As stated, Smith became president on June 1, 1920, and remained so up to the time of the trial. It is the rule,

(295 S.W.)

however, that the charge of the court must be considered as a whole and not by piecemeal. Considered in connection with the repeated submission of the question as to whether Frost and Llewellyn had been released by directors and by Frost, it must be considered that the jury understood that the matter of knowledge inquired about related to a time previous to the acts of ratification relied on.

If the liability of Frost and Llewellyn depended upon the application of the law relating to novation as between creditor and debtor generally applied and apart from the fiduciary relationship of Frost to the bank, as seemingly treated in the opinion of the commission, the trial court was perhaps justified in not submitting the issue as to loans made by Frost after the partnership between Frost, Llewellyn, and Davidson was dissolved and represented by the notes for $2,534.85 and $3,683.75. The uncontradicted evidence showed an approval of these loans by the directors, and we construe the verdict as meaning that Smith, at that time, had notice of the retirement of Frost and Llewellyn from the Davidson Motor Company before the loans were made. Smith's testimony shows that Davidson gave him (Smith) information clearly indicating that Frost and Llewellyn had retired from said firm. It is true the directors said they approved these loans on Frost's positive assurance that he and Llewellyn were liable thereon, but this issue was neither submitted nor requested.

If Frost had been instructed by the board not to make any loan to Davidson and did so after the partnership was dissolved and, thereafter secured the approval of the directors of the loan upon the representation that he (Frost) was personally liable thereon, it would be difficult to find anything in the authorities that would entitle him to release when it was discovered that his act without authority had resulted in a loss to the bank, but, as stated, the case was not submitted nor requested to be submitted on this theory. On the other hand, if Frost's liability to the bank is to be treated on the same basis as that of a stranger, then the court's action was undoubtedly correct, for in such a case the knowledge of Smith would be imputed to the bank. Goldstein v. Union National Bank, 109 Tex. 555, 213 S. W. 584.

[9] Appellant offered the proof of two of the directors of the bank that if they had known of the material facts surrounding the substitution of the Davidson note and the Armstrong note, for the $11,000 note of the Davidson Motor Company, they would not have agreed to the substitution as they did. The proposed testimony was, on the objection of the appellees, excluded, and error assigned thereon. The evidence should have been admitted. International Land Company v. Parmer, 58 Tex. Civ. App. 70, 123 S. W. 197; Ry. Co. v. Brown (Tex. Civ. App.) 163 S. W.

383; 20 R. C. L. p. 295, § 77. But we do not believe this matter is of sufficient importance to warrant a reversal of the case on this ground alone.

[10] The testimony of these witnesses plainly showed that they would not have accepted the notes in question if they had known of the dissolution of the Davidson Motor Company or if their act in accepting the substituted paper would have any effect on Frost's and Llewellyn's liability. On the other hand, they were permitted to testify that they accepted the substituted paper upon Frost's positive assurance that he and Llewellyn were still liable thereon. That had the same effect as the other, except that it is stronger, while the rejected testimony is negative only.

[11] William Frost, administrator, was permitted to testify that after his father's death he had a conversation with W. I. Smith, then president of the bank, in which Smith informed him that the bank was holding the Frost estate and Llewellyn liable for Davidson's debt to the bank, and that the witness asked Smith who was pushing it and who was wanting to file suit, and Smith then informed the witness that Mr. Brock and Dr. McCracken, two of the directors, were behind it and were the ones pushing the matter. It is believed that Smith, being the president of the bank and, under the law, having control of its litigation and under the findings of the jury, having been invested by the board of directors with full power and authority in the direction and management of appellant's affairs, that his declarations, if material, are the voice of the corporation and not hearsay, which were the objections urged.

[12] Complaint is made of the action of the court in permitting the appellees on cross-examination to read from the books and records of the First State Bank & Trust Company various entries offered to contradict plaintiff's witnesses, and then allowing the defendants, in making out their case, to again read the same records and documents to the jury. These matters are largely and wisely left to the discretion of the trial court, and before such matters can become the subject of appellate review, a clear abuse of the court's discretion must be shown. In this case, Frost was dead and appellees were under the necessity of securing their testimony from the books and files of the appellant bank. We are unable to say that the court abused his discretion with reference to this matter.

[13] Objections were made to the testimony of Llewellyn and Davidson respecting the dissolution of the partnership between themselves and Frost. The appellant's claim is that Frost, being adversely interested in said transaction, could not bind the bank, and the witnesses were parties to the suit, therefore incompetent, under the statute (now article 3716), to testify to a transaction with Frost, then deceased. It appears that David-

son and Llewellyn were not incompetent under said article, considering the position they occupied at the time, to testify to the transaction between Frost, Llewellyn, and Davidson, wherein the partnership then existing between them was dissolved. Hoxie v. Farmers' & Mechanics' National Bank, 20 Tex. Civ. App. 462, 49 S. W. 637; Colonial & U. S. Mortgage Co., et al. v. Thedford et al., 21 Tex. Civ. App. 254, 51 S. W. 263; San Antonio Light Publishing Co. v. Moore, 46 Tex. Civ. App. 259, 101 S. W. 867; Williams v. Farmers' National Bank of Stephenville (Tex. Civ. App.) 201 S. W. 1083.

The other assignments relate to the sufficiency of the testimony, and our views relating to that matter have been expressed in passing upon the other questions involved.

Finding no reversible error, all of the assignments are overruled and judgment of the trial court is affirmed.