**BROOKS et al. v. ZORN.  (No. 1864.)**

Court of Civil Appeals of Texas.  Beaumont.
Nov. 7, 1929.

Rehearing Denied Feb. 19, 1930.

Howth, Adams & Hart and King & Jackson, all of Beaumont, for appellants.

W. D. Gordon and E. E. Easterling, both of Beaumont, for appellee.

On Motion for Rehearing.

O'QUINN, J. Ed C. Cherry, J. S. Edwards, W. D. Gordon, J. T. Shelby, and Mrs. Carrie Little, stockholders of the Brooks Supply Company, a corporation, on March 4, 1927, filed this suit in the district court of Jefferson county against T. D. Brooks and his wife, Mrs. Pearl Brooks, also stockholders of said corporation, alleging that while T. D. Brooks was general manager of the Brooks Supply Company, in conspiracy with his wife, he had diverted funds in large sums from the corporation with which he had purchased certain property, real estate and personal, as described in their petition. The prayer was for the recovery of this property and for a temporary injunction restraining the defendants from disposing of same pending litigation.

About the time this petition was filed, in fact on March 1, 1927, the corporation, Brooks Supply Company, was adjudged a bankrupt. Appellee, J. Zorn, Jr., was named receiver, and as such joined in plaintiffs' petition. Later he was appointed trustee in bankruptcy of the corporation, and as such filed a plea in intervention praying as did plaintiffs. Temporary injunction was granted as prayed for, but was later modified in certain respects. The defendants appealed from that order, and by written opinion, Brooks v. Cherry, 298 S. W. 170, we reversed the judgment of the lower court and dissolved the injunction. We refer to this opinion as thus reported for a full and complete statement of the nature of the pleadings, the relief granted by the trial court, and the facts developed upon that hearing, which we adopt as a part of this opinion.

The case was regularly called for trial; all parties appeared and announced ready for trial; the pleadings were read to the jury, and all parties adduced such evidence as was available to them. At the close of the evidence, appellants moved for an instructed verdict, which was refused, and to which refusal they excepted. The case was then submitted to the jury upon special issues. To these issues defendants, appellants, excepted on the ground, among others, that they were not raised by the evidence, insisting upon their instructed verdict. They also requested the submission of certain special issues, which were refused. After the jury had been out for some time, and after they had reported the improbability of a verdict, the plaintiff, J. Zorn, Jr., appellee, by motion filed and allowed by the court, dismissed his cause of action without prejudice, except as to block No. 4 of the Crary addition to the city of Beaumont, and moved the court to instruct the jury to return a verdict in

his favor for all of said block 4, except certain portions thereof which the evidence showed had been sold before the institution of the suit, and that the court grant plaintiff judgment against the defendants for an amount equal to the sums received by defendants for the portions of said block 4 so sold, together with 6 per cent. interest thereon from the dates of said sales to the date of judgment. This motion was granted by the court and the jury instructed to return a verdict accordingly. Thereupon the jury returned a verdict for plaintiff for all of block 4, except the portions shown to have been sold, and a money judgment against defendants for a total of $18,067.50. Judgment as per the verdict was accordingly entered. The judgment also dismissed all parties plaintiff from the suit except intervening plaintiff, J. Zorn, Jr., trustee. From that judgment defendants have brought this appeal.

The record discloses that the corporation, Brooks Supply Company, bought what is known as block No. 4 of the B. D. Crary addition to the city of Beaumont, for the purpose of erecting thereon a home for the corporation. It paid $10,000 cash for the land. The home for the corporation was not built. Brooks testified that the reason the home for the corporation was not built was because when the corporation got any money ahead, the directors would have it paid out in dividends. He testified that the stockholders "kept after" him to sell block 4, kept after him "to do something with it," said "we couldn't build on it," and he decided to buy it himself. On February 9, 1921, without any resolution or order by the board of directors of the corporation, authorizing the sale of this property, T. D. Brooks, as president of the corporation, executed a deed conveying to himself said block 4 for a recited cash consideration of $12,000. This deed was attested by H. W. Gardner, as secretary of the corporation, and impressed with the corporate seal. Subsequent to his purchase, August, 1924, Brooks transferred block 4 to his wife for a recited consideration of "one dollar and love and affection."

March 28, 1924, Brooks sold a one-half interest in three of the lots in block 4 to W. D. Gordon, who had previously purchased the stock of J. L. Cunningham in the corporation; Brooks and Gordon made valuable improvements on these three lots and then sold them to Heartfield and others, the purchase price and interest thereon paid by Heartfield amounting to $14,340. December 16, 1924, Brooks and wife sold two of the lots in block 4 to one Kassan, for a consideration of $3,727.50. The remaining lots in said block were unsold, the title still standing in the name of Mrs. Pearl Brooks when this suit was instituted.

We shall not discuss seriatim the propositions upon which appellants rely for a re-

versal of the judgment, nor those of appellee for its affirmance, but will discuss what we deem to be the decisive questions involved and raised.

It is insisted by appellants that their motion for an instructed verdict should have been given, and that the court erred in refusing same. This motion was based upon the recitals in the deed from the corporation, Brooks Supply Company, to defendant T. D. Brooks, that it was given for a consideration of $12,000 cash in hand paid; that the execution of the deed was authorized by a vote of the corporation, and that the deed having been duly executed by T. D. Brooks, president of the corporation, and attested by H. W. Gardner, as secretary, and impressed with the seal of the corporation, was prima facie valid; and that no evidence was offered impeaching these recitals. This contention is overruled. A corporation can act only by and through its officers. The board of directors is the body usually intrusted with the authority to conduct the business of the corporation—they represent the corporate body. The president of a corporation has no power, by virtue of his office, to sell or otherwise dispose of the corporation's property. For the president of a corporation to convey the property of the corporation, he must have been authorized so to do by the board of directors. So, Brooks, as president of the Brooks Supply Company, to sell the land in question, the property of the corporation, and make deed thereto, must have been authorized to do so by the board of directors of said corporation. Generally it may be said that the execution of a conveyance by the proper officer of a corporation, which is duly attested by the secretary of the corporation, and the instrument of conveyance bears the impress of the corporate seal, creates a presumption that the execution of the instrument by the officers and the sale evidenced by the instrument were duly authorized by the corporation, which is bound thereby. But unquestionably this presumption is a rebuttable one. Here it is not only undisputed, but is admitted by defendants, that no order or resolution was passed by the board of directors of the Brooks Supply Company, the corporation, authorizing the execution of the deed, and also that the sale was not made for cash, as recited in the deed, but that the consideration was paid to the corporation by charging the amount, $12,000, to defendant, T. D. Brooks on the books of the corporation. It is certain that the payment to the corporation of the consideration mentioned in the deed was by Brooks charging the full amount, $12,000, to his personal account with the corporation, on the books of the corporation. Brooks himself so testified. This evidence was sufficient to meet the prima facie showing of regularity in the conveyance made by the recitals in the deed.

But appellants contend that in addition to the recitals contained in the deed authorizing the conveyance, and the acknowledgment therein of the receipt of the consideration recited, and the due formality of the deed, as required by law, said conveyance and deed were duly and legally ratified and confirmed by a proper resolution of ratification passed by the board of directors of said corporation, whereby said deed was conclusively valid and binding, as the deed of said corporation, and therefore the court erred in refusing appellants' motion for an instructed verdict. If in fact the board of directors, with full knowledge of all the facts attendant upon the execution of the deed, passed a resolution ratifying said conveyance, then the deed became the act of the corporation, and was binding. But appellee contends that there was no such ratification. Whether there was is a question of fact to be determined from the evidence. The record herein, at page 87, contains the record of a called meeting of the board of directors, which contains the statement: "President T. D. Brooks explained that the meeting was called to ratify the sale of Block No. 4 of the B. D. Crary Addition to the City of Beaumont, Jefferson County, Texas, and on motion of W. D. Gordon and seconded by Mrs. Carrie Little, the following resolution was passed: Resolved that the sale of Block No. 4 of the B. D. Crary Addition to the City of Beaumont, Jefferson County, Texas, under date of February 5, 1921, by the Brooks Supply Company, acting by and through its duly authorized president, T. D. Brooks, and secretary, H. W. Gardner, for a total of $12,000, which deed has been duly recorded in the deed records of Jefferson County, Texas, and to which reference is hereby made, is hereby ratified and confirmed by the Board of Directors."

This record in the minutes of the corporation discloses that said meeting was held December 12, 1924, in the office of W. D. Gordon, and that the following directors were present: T. D. Brooks, Ed C. Cherry, W. D. Gordon, Mrs. Carrie Little, and J. T. Shelby. The minutes were attested by T. D. Brooks, president, and J. T. Shelby, secretary. As before stated, appellee contends there was no ratification of the deed. This contention is based upon three grounds: (a) That there was no quorum or requisite number of the board of directors present and voting for the resolution, to adopt same; (b) if there was a quorum of the board of directors present, that a majority of those present were disqualified from voting, for in that they were personally and directly interested in the matter at hand; and (c) because the purported ratification was based upon an acknowledged consideration of $12,000 cash paid, and the undisputed facts show that it was not paid. By reason of all of which, it is

insisted, no ratification resulted. Defendants plead ratification. The minutes of the meeting of the board of directors of the corporation above alluded to show that there were five directors present. There is nothing in the record to disclose how many composed the board of directors. But as there is no contention of either party that the board of directors consisted of more than five, we will presume that five constituted the board of directors. The record above quoted shows five present, and therefore raises the issue that those named in the minutes were actually present. Ed C. Cherry testified that he was not present. Shelby testified that he was called over the phone and asked to attend the meeting, but that he replied that he was quite busy and would come if he could, but that if he was not there to count him present. He then says that he did not attend. Mrs. Carrie Little testified that she was present and that neither Cherry nor Shelby was there. She also testified that Shelby was called over the phone and that he said to count him present if he was not there. This evidence also raised the question of how many and who were present. It was a question of fact to be determined by the jury. One of the issues submitted in the court's charge to the jury was on this very point: "Give the name of all who were personally present at the directors' meeting in the office of W. D. Gordon on the 12th day of December, 1924." And in this connection the court charged the jury that in answering said question "that one connected with said meeting by telephone only is not personally present." It thus became a vital question of fact as to who of the directors were present at said meeting, and the court erred in taking said question from the jury and finding the fact himself, which he must have done adversely to appellants, when he directed a verdict for the plaintiff, thus denying the right of defendants to have the jury find on the question.

But appellee insists that if it be conceded that all of the directors stated in the minutes of said meeting to be present were actually there, nevertheless, no ratification was had because a majority of those present were personally and directly interested in the matter adversely to the corporation, and were thus disqualified to vote for the ratification resolution. This contention comes out of the following facts: Defendant T. D. Brooks, after receiving the deed to block 4, sold a one-half interest in three lots in said block to W. D. Gordon, who still owned same; that Brooks, after getting the deed to the block of land, gave his check to some of the other stockholders who owned 12 per cent. of the corporate stock, for their proportionate part of the consideration recited in the deed, $12,000, which checks were paid, and among which stockholders were J. T. Shelby and Mrs. Carrie Little, directors aforesaid. We think that Brooks and Gordon were unquestionably so interested as to be disqualified from voting for the resolution. But we do not think that the others (Shelby and Mrs. Little) were disqualified. It is undisputed that Brooks paid no money to the corporation, as recited in the deed, as a consideration for the conveyance of the block of land, but that he simply charged himself on the books of the corporation with the full amount of the recited consideration; he contending that the corporation owed him more than that amount. This charge on the books still stands. It has in no manner been changed or modified. The amount Brooks paid to the 12 per cent. stockholders was no part of the $12,000 consideration stated in the deed. He says he paid that in addition to the $12,000 named in the deed, making, he says, the block of land cost him about $13,000. His paying, to these other stockholders, sums in the proportion that their percentage of the stock of the corporation owned by them bore to the percentage of said consideration, was a matter personal between himself and them; it was not a payment to the corporation, nor was it a dividend allowed to such stockholders. In our opinion his paying of these amounts to these stockholders, in the manner he did, did not cause them to be so directly and personally interested in the transaction adversely to the corporation as to disqualify them from voting for the ratification resolution. If we are correct, then there were three directors shown in the minutes of the meeting of the board of directors to be present, constituting a majority of those shown by the minutes to be present, who were competent to vote on the resolution, namely, Cherry, Little, and Shelby. But, as before stated, Cherry and Shelby testified that they were not present, and this testimony was corroborated by Mrs. Little. So, after all, the question of who was present at said meeting was a very material one of fact, which, as stated above, the court withdrew from the jury and determined himself. However, we will further say that the acceptance by these stockholders from Brooks of their pro rata in cash of the purchase money, as represented by their stock, was no wrong against the corporation, nor against any of the stockholders, as such. This issue, in our opinion, was of importance only as it affected existing creditors of the corporation, if any. Existing creditors, and existing creditors only, could complain. Subsequent creditors had no right to complain. Aransas Pass Harbor Company v. Manning, 94 Tex. 558, 63 S. W. 627, 629; City of Fort Worth v. National Park Bank (C. C. A.) 261 F. 817, 819. On oral argument appellee insisted that he had met this burden—showing the existence of creditors—by the contention of appellants that they were creditors. That they (appellants) were existing creditors was immaterial, since they were parties to the

transaction. Therefore, there being no issue of existing creditors either by the pleadings or by the evidence, we think the issue of disqualification goes out of the case.

■ Whether the insistence that the resolution of ratification said to have been adopted was ineffective because it was based upon an acknowledged consideration of $12,000 cash paid, recited in the deed, and which was not paid, is well taken, should, we think, depend upon whether or not, at the time the resolution was voted, the fact that the consideration was not paid in cash, as recited in the deed, but was only charged to defendant T. D. Brooks' personal account on the books of the corporation, was known to all of the directors participating in the matter. If such fact was known to the directors, and with that knowledge they, or a majority of them being competent to vote, voted the resolution, it would be effective, but not so if the fact was not known to them. The pleadings and the evidence raised this issue, and an issue embodying same was submitted by the court in his charge to the jury for their finding, but the court's directing a verdict withdrew the issue from the jury and left it for the court's determination. This was error.

■ Again, appellants say that the corporation ratified the deed by acquiescence. On this issue the record reflects the following: The deed was executed February 9, 1921. It was placed of record the day of its execution. Brooks charged himself with the consideration mentioned in the deed, $12,000, on the books of the corporation at once. The books of the corporation were audited semiannually showing this charge; copies of these audits were furnished each of the stockholders; all of the stockholders knew of the execution of the deed to Brooks; Brooks owned 66 per cent. of the stock of the corporation, J. L. Cunningham owned 22 per cent., and the other 12 per cent. was owned by various other stockholders. Brooks paid to the owners of the 12 per cent. of the stock their full share or proportion of the consideration of $12,000 for the deed, in the ratio of the stock owned by them, and also settled with Cunningham in a settlement of matters between them. No complaint was ever made relative to the execution of the deed or the manner in which the consideration was paid until the filing of this suit, March 4, 1927. We think the issue of ratification by acquiescence was one of fact and not of law. If the directors knew, or in the exercise of ordinary care ought to have known, of the true facts of the execution of the deed, in the absence of existing creditors, appellants should have had judgment on the theory of ratification by acquiescence. Coppard v. Bank (Tex. Civ. App.) 184 S.W. 551; Fort Worth Publishing Co. v. Hitson, 80 Tex. 228, 14 S. W. 843, 16 S. W. 551; Bunn v. City of Laredo (Tex. Civ. App.) 213 S. W. 320;

Canadian Long Distance Telephone Co. v. Seiber (Tex. Civ. App.) 159 S. W. 897; Pittsburgh, C. & St. L. R. Co. v. Keokuk & H. Bridge Co., 131 U. S. 371, 9 S. Ct. 770, 33 L. Ed. 157. But if the directors did not know, nor in the exercise of ordinary care could have known, all the material facts surrounding the execution of the deed, there was no such ratification.

■ Appellants insist that the court erred in refusing their request for an instructed verdict because, they say, the deed was authorized and executed with the consent of each and every stockholder of the corporation. In the absence of existing creditors, it is a correct proposition to say that a deed, executed by the president of a corporation to himself individually in the form and manner required by law, is valid and vests in him both the legal and equitable title so conveyed, when the execution of the deed is authorized and consented to by all the stockholders. In Harbor Co. v. Manning, supra, Judge Gaines says: "A majority of the stockholders, even all save one, cannot authorize a sale of the corporate assets, for the reason that every stockholder has the right to require the action of the legally constituted agency—the board of directors—in the management of its business. But when all assent, there being no creditors to complain, they should not be permitted to complain. When every one who has an interest in the property, although that interest may, as long as the corporation exists, be indirect, consents that the officer appointed by the law to convey the assets of the corporation, when duly authorized so to do, shall convey, and it is accordingly so conveyed, we are of opinion that the conveyance should be held good." Smith v. Moore (C. C. A.) 199 F. 699, cites with approval Thompson on Corporations (2d Ed.) § 1074, which announces the following proposition, on authority of the Manning Case, just cited: "And, in the absence of creditors, it was held that the consent of the directors and stockholders to a conveyance, by the president, of the corporate property, was sufficient authority without any action by the Board of Directors, as a board." In City of Fort Worth v. National Park Bank, supra, on the authority of the Manning Case and Taylor v. Bank (Tex. Civ. App.) 181 S. W. 534, it was said: "In the absence of objection by any one who was a creditor of the corporation at the time the deed was made, Reid, as president, could effectually make, in the name of the corporation, a deed of gift of its lands to himself and Baldridge." Whether the stockholders all authorized and consented to the execution of the deed was a question of fact to be found by the jury.

■ But appellee contends that appellants cannot be heard to urge as error the withdrawing of these issues from the jury and di-

recting a verdict by the court, for in that these issues were substantially submitted by the court in its charge to the jury, and that appellants objected to their submission on the ground, among others, that they were not raised by the evidence. Appellee says that appellants cannot blow hot and cold; that they cannot object to the submission of these issues and then assign error against the action of the court in withdrawing them; that in withdrawing these issues the court merely corrected the error committed by submitting them. As thus stated, the withdrawal of these issues would not have been error; but the full facts are: Appellants moved for an instructed verdict, and it reasonably appears on the whole record that they were objecting and excepting to the submission of any issue on the theory that under all the evidence they were entitled to judgment. When this request was refused, appellants sought to protect their rights by requesting the submission of these issues in language of their own choice as reflected by their special requested charges, which were refused. Error was properly assigned on these facts on the court's refusal to submit appellants' requested issues.

Appellee insists that the deed executed by Brooks to himself, without authorization of the board of directors, was utterly null and void and ineffectual to convey to him the corporation's title to block 4 in question; wherefore, the instructed verdict was proper and the judgment should be affirmed.

■■■ We do not believe this contention sound. The mere fact that Brooks, as president of the corporation, executed the deed to himself as an individual, did not invalidate the deed, provided its execution was lawfully authorized. A deed executed by the president of a corporation under the seal of the corporation, to himself as an individual, is not void on its face, but at worst only voidable. Speaking for the San Antonio Court of Civil Appeals, in Coleman v. Luetcke, 164 S. W. 1117, 1120, Judge Fly said: "There is no force in an objection to a deed because made by the president * * * to himself. Jones v. Hanna, 24 Tex. Civ. App. 550, 60 S. W. 279."

We regard the case of Tenison v. Patton, 95 Tex. 284, 67 S. W. 92, 93, as being directly in point on the proposition that the deed by Brooks to himself was not void. In that case Tenison held the legal title in trust for the State National Bank of Dallas. Thus holding the title he deeded the land to J. F. O'Connor. The suit was against Tenison to require him to account for the profits made by a sale under O'Connor. The issue was whether O'Connor acquired the absolute title, or whether he held the title in trust for Tenison. Judgment was against Tenison on the theory that O'Connor was holding the title in trust. Judge Williams thus stated the legal issue: "The argument in support of the judgment

rests upon the principle that a trustee, or person occupying a fiduciary relation to another, is incapacitated, in equity, to buy from himself property committed to his care." While recognizing the soundness of the principle thus stated by him, in overruling the proposition that a deed made in violation of this principle was void, he said: "We are therefore of the opinion that, situated as was this corporation, the mere fact that Tenison was a director of the corporation and was interested on both sides of the transaction in question, does not conclusively establish its voidability. That, at the worst, it was only voidable, nearly all of the authorities agree; the principal difference being upon the question whether or not it was voidable at the mere option of beneficiaries, without inquiry into its inherent fairness." Davis v. Nueces Valley Irrigation Co., 103 Tex. 243, 126 S. W. 4, 7, also supports our holding that the deed was not void. In that case Davis, as president of the corporation, deeded the land in question to his wife, who was also a stockholder in the corporation. Discussing this deed, Judge Brown said: "The invalidity of her purchase depends upon the question whether or not it was practically a purchase for and on behalf of her husband. If the property purchased by her became a part of the community estate of herself and her husband then the transaction would be voidable."

In support of their proposition that the deed by Brooks to himself was absolutely void, appellee cites the following Texas cases: Tempel v. Dodge, 89 Tex. 69, 32 S. W. 514, 33 S. W. 222; Green v. Hugo, 81 Tex. 452, 17 S. W. 79, 26 Am. St. Rep. 824; Aransas Pass Harbor Co. v. Manning, 94 Tex. 558, 63 S. W. 627; Davis v. Irrigation Co., 103 Tex. 248, 126 S. W. 4; Tenison v. Patton, 95 Tex. 284, 67 S. W. 92; Texas Consol. C. & M. Ass'n v. Dublin C. & M. Co. (Tex. Civ. App.) 38 S. W. 404. The Manning and Tenison Cases have already been reviewed, and they go no further than to say that at the worst such a deed is voidable. Tempel v. Dodge and Green v. Hugo are not in point for the reason that in those cases the deeds were not executed by the president of the corporation. The Dublin C. & M. Company Case is not in point, since in that case the deed was not executed under the seal of the corporation.

■■■ Appellants say the court erred in refusing to sustain their plea of limitation against appellee's plea for cancellation of the deed. As we understand the authorities, the deed executed by Brooks as president of the corporation to himself, under the seal of the corporation, was not *void* but at the worst only *voidable*. If only voidable, it was not subject to attack in a collateral proceeding, but could be attacked only in a direct proceeding brought for that purpose, which is the nature of appellee's suit herein. Suits of this

750

character must be brought within four years after the cause of action accrues, or within four years after those in whom the cause of action rests know, or in the exercise of due care should know, that the wrong was done them. The evidence clearly raised the issue that every director and every stockholder of the corporation knew of the execution and delivery of the deed in question immediately after it was so executed and delivered on February 9, 1921, and of the consideration paid by Brooks for the deed. Even if they were ignorant of these facts at the time the deed was executed and delivered, the issue was raised that by the exercise of due care they could have acquired this information more than four years before this suit was filed. The deed was filed for record and recorded in the deed records of Jefferson county immediately after its execution and delivery, February 9, 1921, the day of its execution. The consideration, $12,000, was at once charged to Brooks on the books of the corporation, and the books were audited semiannually, the audits showing this charge, and these audits placed before and considered by the board of directors and the stockholders. None of the stockholders or directors ever protested the transaction until the filing of this suit, March 4, 1927. As we have said, these facts raised the issue that by the exercise of due care those interested could have fully acquainted themselves with all the facts more than four years prior to the filing of this suit. As soon as those thus interested knew that the deed had been thus executed and delivered, or as soon as they ought to have acquired this information by the exercise of due care, their cause of action for the cancellation of the deed immediately matured, and from that time the four-year statute of limitation began to run. We think the court erred in refusing to submit to the jury the issue of limitation. However, we will say that, in view of another trial, if under proper pleadings the issue is raised of existing creditors without actual knowledge of the true facts of the execution of the deed by Brooks to himself or that in the exercise of ordinary care they could not have acquired such knowledge, it should be submitted to the jury. As against existing creditors of the corporation the directors who received a personal consideration for their agreement to the execution of the deed were disqualified to ratify it, and knowledge by them of the facts of the execution of the deed would not put in operation the statute of limitation as against existing creditors.

■ The failure by appellee to plead a tender of the consideration expressed in the deed, or to offer to do equity towards appellants on their theory of the facts, did not render his petition subject to a general demurrer. Appellee stands in the shoes of the creditors and, on the issues made in the case,

can assert any and every right that an existing creditor could have asserted. Thus, though the deed may have been authorized by all of the stockholders, it was voidable at the instance of the existing creditors, and to assert their rights it was not necessary for them to tender or plead a tender of the purchase price paid by Brooks.

■ In case they should be cast in the final trial, appellants say the court erred in its measure of damages against them. We think this proposition is correct. If appellants' deed is stricken down, they have no title to the unsold lots and would be liable to appellee for the purchase price received from Kassan with interest, and for one-half of the purchase price received for the lots sold by Brooks and Gordon to Heartfield, less the value of the improvements placed thereon in good faith. No claim was made by appellee for the value of the one-half interest sold to Gordon. Upon another trial, we submit that the improvements made upon the property bought by Heartfield are subject to the following propositions: If these improvements were made in good faith by appellants, believing that their deed was valid, though in law it may be found invalid, appellee should not recover the value thereof; but, if the improvements were not made in good faith, appellee should recover their value. This issue was not made by appellants in their pleading, and therefore their proposition would not constitute reversible error. We have discussed it only because it is presented by appellants, and if properly pleaded should go to the jury on another trial.

It is not necessary to discuss the issue of limitation, as it relates to these items of recovery, because appellee can recover only by a finding in his favor on this issue as it relates to the issue of title to the real estate.

Appellants have made the following defensive issues which should go to the jury as to the amount for which they are liable: They claim, and so testified, that after the deed was executed by Brooks to himself, they executed a mortgage upon this property for the sum of $9,000 for the benefit of the corporation, and paid this money into the treasury of the corporation, and that all of it was used by the corporation for its benefit. They further claim, and so testified, that all of the proceeds of the sale to Kassan was applied upon this debt and that the balance was liquidated by the proceeds of the sale to Heartfield. If these contentions should be sustained by the jury, appellants should be given credit for this $9,000 as against any money judgment that might be rendered against them. They have made no issue by their pleadings of an equitable lien against the unsold lots for the amount that this $9,000 might exceed the sum received by them from the sale of the lots to Kassan and Heartfield.

Appellants' proposition that a personal judgment against Mrs. Brooks would not lie is not sound. As a matter of law, if the deed to Brooks was ineffective to vest title in him, she was not an innocent purchaser under the deed from him to her. The proceeds of the sales were for her account, and as this money passed into her hands as her separate property, if there is any liability it lies against her individually.

Upon original submission we filed our opinion herein reversing the judgment of the lower court upon the sole ground that the court erred in refusing to submit to the jury the issues of ratification, under the written resolution of ratification. Upon rehearing appellee has vigorously assailed our holding on these issues, and appellants, on oral argument, have asked that we review their other propositions. We have again reviewed the entire case, and, that all the issues may be discussed together, withdraw our original opinion, as we did in Taylor v. Higgins Oil & Fuel Co. (Tex. Civ. App.) 2 S.W.(2d) 288, and file this as our opinion herein.

The motion for rehearing is overruled.

HIGHTOWER, C. J. I agree to the disposition made of this appeal as reflected by the opinion of Mr. Justice O'Quinn; and I concur in all the conclusions announced, with one exception: I cannot agree with the conclusion that J. T. Shelby and Mrs. Carrie Little were not disqualified as directors to ratify the deed to Brooks. I think that upon the undisputed facts, as stated by Judge O'QUINN, Mr. Shelby and Mrs. Little were both disqualified, as a matter of law, to ratify the deed to Brooks, because they were, in legal contemplation, directly and personally interested in the transaction, as claimed by the appellee.