## BROOKS et al. v. ZORN.

### No. 2202.

Court of Civil Appeals of Texas. Beaumont.
Sept. 27, 1932.

Rehearing Denied Oct. 12, 1932.

Howth, Adams & Hart and S. M. King, all of Beaumont, for appellant.

W. D. Gordon and E. E. Easterling, both of Beaumont, for appellee.

WALKER, C. J.

This case has been before this court twice before. Brooks v. Cherry, 298 S. W. 170, and Brooks v. Zorn, 24 S.W.(2d) 742, 745. We refer to our opinions thus reported for the history, nature, and result of this suit on the former appeals. Under our mandate of reversal and remand, it was again tried to a jury, and on the 15th day of May, 1931, on motion of appellee, judgment was rendered in his favor for "the following described property, to-wit: Situated in the City of Beaumont, Jefferson County, Texas, and being all of Block 4 of B. D. Crary Addition to Beaumont, save and except the lots 45 and 46 of said Block 4 sold on December 16, 1924, to M. Kassan, as evidenced by deed recorded in Vol. 249, page 133, of the Deed Records of Jefferson County, Texas; and save and except the three lots out of said Block 4, described in a deed from T. D. Brooks et al. to J. B. Heartfield, et al., dated November 9, 1925, and recorded in Vol. 262, page 83 of said deed records, all the remainder of said lots in said Block 4 being hereby adjudged to the plaintiff against the said defendant, and that writ of possession and restitution be issued therefor." From that judgment appellant has duly prosecuted her appeal to this court.

This case was an action by appellee, J. Zorn, trustee in bankruptcy of Brooks Supply Company, a corporation, against appellant, Mrs. Pearl Brooks individually and as independent executrix and sole devisee and as survivor in community of T. D. Brooks, deceased, to recover that portion of block 4 of the Crary addition awarded to him by the judgment of the court rendered herein, together with the proceeds of the sale of certain lots sold by appellant and her husband out of this block.

We take the following statement of the facts of the acquisition of block 4 of the Crary addition from our former opinion in Brooks v. Zorn, supra:

"The record discloses that the corporation, Brooks Supply Company, bought what is known as block No. 4 of the B. D. Crary addition to the city of Beaumont, for the purpose of erecting thereon a home for the corporation. It paid $10,000 cash for the land. The home for the corporation was not built. Brooks testified that the reason the home for the corporation was not built was because when the corporation got any money ahead, the directors would have it paid out in dividends. He testified that the stockholders 'kept after' him to sell block 4, kept after him 'to do something with it,' said 'we couldn't build on it,' and he decided to buy

it himself. On February 9, 1921, without any resolution or order by the board of directors of the corporation, authorizing the sale of this property, T. D. Brooks, as president of the corporation, executed a deed conveying to himself said block 4 for a recited cash consideration of $12,000. This deed was attested to by H. W. Gardner, as secretary of the corporation, and impressed with the corporate seal. Subsequent to his purchase, August; 1924, Brooks transferred block 4 to his wife for a recited consideration of 'one dollar and love and affection.'

"March 28, 1924, Brooks sold a one-half interest in three of the lots in block 4 to W. D. Gordon, who had previously purchased the stock of J. L. Cunningham in the corporation; Brooks and Gordon made valuable improvements on these three lots and then sold them to Heartfield and others, the purchase price and interest thereon paid by Heartfield amounting to $14,340. December 16, 1924, Brooks and wife sold two of the lots in block 4 to one Kassan, for a consideration of $3,727.50. The remaining lots in said block were unsold, the title still standing in the name of Mrs. Pearl Brooks when this suit was instituted."

We supplement the foregoing statement by the following excerpts from appellee's brief:

"Brooks himself was shown to own 66% of the stock of the corporation, Mr. Joe Cunningham 22% and all the other stockholders 12%. Cunningham was adduced as a witness by appellant and his narration of the details of such transaction is shown in his testimony as follows:

"It was discussed for several days on the street, in the bank, in Mr. Brooks' office, in arriving at a conclusion as what to do with this block, and when we met there and decided to affirm the sale, make the sale, it was so well known that no one had any objection and every one understood what was being done.

"Q. Known to whom? A. Those interested.

"Q. Now where was that meeting? A. The meeting was in the Texas Bank when the consummation was made.

"Q. Now who was there? A. Well Brooks was there;. Gardner was there; Shelby was there; I was there, and Johnny Heartfield was there—I think all is mentioned except Mrs. Little and as I recall it now she wasn't present. And that was the consummation after a week or two of discussion here and there in arriving at a program as to the deal.

"Q. After discussion where? A. At various places, as I said.

"Q. One at a time between Brooks and somebody? A. I think Mr. Brooks happened to be in the bank and Howard Gardner, who was there with me, or probably he had Johnny Heartfield with him and just as occasion

would come up we would discuss it. I mean several times during the course of arriving at a conclusion of a sale.

"Q. Now then who was,—what was said there? You have named who was there what was said there and who said it? A. Just an ordinary conversation closing the deal. Mr. Brooks just said we are ready to close this matter up and he made payment to the other people then.

"Q. Right then the day that deed was made? A. The day that deed was made.

"Q. They were all paid right there with them? A. They were paid there.

"Q. Now who was paid and how much to each? A. I don't just remember; their pro rata part according to agreement, and presuming that it was—that they were paid in accordance with the trade that's all. They were all to get theirs and I wasn't to get mine."

"He then narrates as a part of the discussion '2 or 3 days before' took place in front of the City National Bank and that was a conversation between Brooks and Shelby, and that Mr. Brooks told him that he had had such conversation with Shelby and that they had had Mr. Pondrom, a disinterested party 'to figure this thing out for us.' "

"This witness was asked the following question:

"Q. You know the only dividend you got was this informal dividend that you got out of this company's block of ground? A. They just made a sale of the property and just distributed the proceeds of the sale proportionately.

"Q. In other words they valued that property at $12,000, and said to Mr. Brooks informally, verbally, some of them did—or all of them did—you take this $12,000 and you give us your check for our pro rata share, of that $12,000 and it's yours? This is the deal ain't it? A. That describes it very well,' and I think I would have gotten mine right at the same time if mine hadn't been so large that he (Brooks) says 'I'll fix yours later Joe' and this is the whole situation."

"The following was adduced from this witness:

"Q. Well now you knew at that time that this corporation itself so far as its treasury was concerned received not, one dollar of that money didn't you? A. Well it wasn't the purpose of the sale for them to receive the money.

"Q. Was there anything said about who was going to look after the creditors of this company after $12,000 of its assets was partitioned in that manner between the stockholders—who was going to pay the debts? A. I don't think that was discussed.

"Q. Did Mr. Brooks, or any of the rest of

you, say that that was the consideration that he was paying for this block or that he was going to pay some other consideration? A. That was the consideration.

"Q. That was the whole consideration wasn't it? A. That's my opinion.

"Q. Your recollection? A. Yes sir.

"Q. You never heard of any additional consideration than that did you for the sale of this block? A. Well I thought that was the price."

"He was asked about other stockholders and as to whether they were present but he was unable to say who were the other stockholders, particularly as to Mr. Edwards and Mr. Duncan Allen, and this question was asked him:

"Q. But you have stated all who were present at that verbal agreement? A. Well the only ones I recollect. It has been a long time ago, those are the only ones I recollect."

"He claims that he carried Mrs. Little's share of the money to her, she not being there at the time."

At the time of this sale, Brooks claimed an account against the corporation in excess of the $12,000 purchase price. He paid the purchase price by charging himself upon the books of the corporation with $12,000, and in addition thereto paid the other stockholders their pro rata part as represented by their stock holdings, as shown by the Cunningham testimony just quoted. Subsequent to the sale, in an attempt to ratify the deed in question, the board of directors passed the resolution set out in our opinion in Brooks v. Zorn, in the middle of column 2, 24 S.W. (2d) 742, 746. The facts of the ratification and the issues relating thereto are given in that opinion.

On the former appeal we construed appellee's petition as an action to cancel the Brooks deed. On that theory we overruled the contention of appellant that she was entitled to an instructed verdict on her issue of limitation; that is, that this suit was not seasonably filed and was subject to the bar of the statute of limitation of four years. Our opinion, as above reported, at bottom of page 749, paragraphs 18–21 to paragraph 22, column 1, page 750, shows that we treated this issue of limitation as one of the controlling issues in the case and that this theory of limitation rested entirely upon our conclusion that the appellee's petition was an effort to cancel the Brooks deed, and the pleadings of the defendant presented certain defenses thereto which we directed to be sent to the jury.

Appellants have briefed their case on the issues upon which it was reversed and remanded by our last opinion. Appellee has replied by three counter propositions, but on submission in this court submitted his case upon the following statement of the nature of the case, as made by his construction of the pleadings. In his written brief filed herein he says:

"This is not a suit by stockholders to cancel a deed and recover damages. It is not a suit by creditors to cancel a deed and to recover damages. It is not a suit by the trustee in bankruptcy to cancel the deed to Block 4, Crary Addition, or any part thereof. It is not a suit based upon allegations whereby the jurisdiction of a court of equity is invoked to annul a corporation's act or transfer of its property.

"Yet an inspection of the brief by appellants and of propositions laid before the court in this case, assert that it is all of these things.

"We here state that this is a suit by the Brooks Supply Company, now in bankruptcy, acting through the agency and representative of the trustee in bankruptcy, to recover its assets, consisting of what is left unsold of Block 4 of the Crary Addition."

In his oral argument on submission, which he reduced to writing and filed with us as a part of the record, he says:

"If the Court please, I concur with counsel that this case should be affirmed, reformed and affirmed, because of the failure of the lower court to add an item of recovery to the judgment or that it should be reversed and rendered. We, therefore, occupy common ground on what procedure ought to occur in the disposition of the case.

"* * * So I repeat, it is up to you gentlemen to affirm this case or to reverse it and you will declare the law and apply it to a state of undisputed facts, and if you affirm it, you will do likewise, apply the law to the undisputed facts.

"* * * I believe that this court misapprehended this case upon the former hearing of it, because the opinion clearly shows it in some of its recitals, that it conceived that this was a suit on behalf of stockholders seeking to cancel and annul a voidable conveyance. There never was any such case here. No such case was initiated to start with, and it has been amended twice or three times, and there is no such case presented in any amendment. Now what is the case? That is the first question, and what is the case depends upon what the pleadings define as the case. We never sought to cancel a deed, to attack a voidable transaction. We never instituted a suit for stockholders, to assert rights in them to recover anything.

"* * * If this suit is to cancel a deed to that piece of land, reverse and render it to them, not for us. Don't affirm it; there has been no such case before this court. We have a case before this court seeking to recover what? This land and the money ob-

tained by these defendants for purchases of this land sold by them. On what theory? On the theory that the transaction was absolutely void, whereby they undertook to give it away from the corporation, that the title never left that corporation, and passed into Bankruptcy to Mr. Zorn, the trustee in bankruptcy, who is the agent provided by law for the corporation, and the corporation is acting through him, just like it acted originally through the Board of Directors and President. Now that is our suit."

As we understand appellee's construction of the pleadings and the theory of the law thus advanced by him, he rests his case absolutely and entirely upon his proposition "that the transaction was absolutely void." He presented this theory of the case to us on the last appeal. We overruled this contention, saying:

"Appellee insists that the deed executed by Brooks to himself, without authorization of the board of directors, was utterly null and void and ineffectual to convey to him the corporation's title to block 4 in question; wherefore, the instructed verdict was proper and the judgment should be affirmed.

"We do not believe this contention sound. The mere fact that Brooks, as president of the corporation, executed the deed to himself as an individual, did not invalidate the deed, provided its execution was lawfully authorized. A deed executed by the president of a corporation under the seal of the corporation, to himself as an individual, is not void on its face, but at worst only voidable. Speaking for the San Antonio Court of Civil Appeals, in Coleman v. Luetcke, 164 S. W. 1117, 1120, Judge Fly said: 'There is no force in an objection to a deed because made by the president * * * to himself. Jones v. Hanna, 24 Tex. Civ. App. 550, 60 S. W. 279.'

"We regard the case of Tenison v. Patton, 95 Tex. 284, 67 S. W. 92, 93, as being directly in point on the proposition that the deed by Brooks to himself was not void. In that case Tenison held the legal title in trust for the State National Bank of Dallas. Thus holding the title he deeded the land to J. F. O'Connor. The suit was against Tenison to require him to account for the profits made by a sale under O'Connor. The issue was whether O'Connor acquired the absolute title, or whether he held the title in trust for Tenison. Judgment was against Tenison on the theory that O'Connor was holding the title in trust. Judge Williams thus stated the legal issue: 'The argument in support of the judgment rests upon the principle that a trustee, or person occupying a fiduciary relation to another, is incapacitated, in equity, to buy from himself property committed to his care.' While recognizing the soundness of the principle thus stated by him, in overruling the

proposition that a deed made in violation of this principle was void, he said: 'We are therefore of the opinion that, situated as was this corporation, the mere fact that Tenison was a director of the corporation and was interested on both sides of the transaction in question, does not conclusively establish its voidability. That, at the worst, it was only voidable, nearly all of the authorities agree; the principal difference being upon the question whether or not it was voidable at the mere option of beneficiaries, without inquiry into its inherent fairness.' Davis v. Nueces Valley Irrigation Co., 103 Tex. 243, 126 S. W. 4, 7, also supports our holding that the deed was not void. In that case Davis, as president of the corporation, deeded the land in question to his wife, who was also a stockholder in the corporation. Discussing this deed, Judge Brown said: 'The invalidity of her purchase depends upon the question whether or not it was practically a purchase for and on behalf of her husband. If the property purchased by her became a part of the community estate of herself and her husband then the transaction would be voidable.'

"In support of their proposition that the deed by Brooks to himself was absolutely void, appellee cites the following Texas cases: Tempel v. Dodge, 89 Tex. 69, 32 S. W. 514, 33 S. W. 222; Green v. Hugo, 81 Tex. 452, 17 S. W. 79, 26 Am. St. Rep. 824; Aransas Pass Harbor Co. v. Manning, 94 Tex. 558, 63 S. W. 627; Davis v. Irrigation Co., 103 Tex. 248, 126 S. W. 4; Tenison v. Patton, 95 Tex. 284, 67 S. W. 92; Texas Consol. C. & M. Ass'n v. Dublin C. & M. Co. (Tex. Civ. App.) 38 S. W. 404. The Manning and Tenison Cases have already been reviewed, and they go no further than to say that at the worst such a deed is voidable. Tempel v. Dodge and Green v. Hugo are not in point for the reason that in those cases the deeds were not executed by the president of the corporation. The Dublin C. & M. Company Case is not in point, since in that case the deed was not executed under the seal of the corporation." 24 S.W.(2d) 742, 749, bottom col. 1, top col. 2.

■ Appellee's petition for writ of error against our last opinion was dismissed by the Supreme Court for want of jurisdiction. As the Supreme Court thus refused to review our conclusion that the deed in issue herein was not absolutely void, we think that construction has become the law of this case.

■ As the Brooks deed was merely voidable, and not absolutely void, appellee could have relief only by having a cancellation of the deed. He now says that cancellation was not prayed for by him, nor does he ask that relief in this court. It follows from what we have said that the judgment of the lower

court must be reversed and judgment here rendered for appellant for the land in controversy.

However, if our last opinion correctly defines the issues made by the pleadings, it would still be our duty to reverse and render the judgment of the lower court. The issue of four years' limitation, as defined in paragraphs 18 to 21 of our last opinion (24 S.W. (2d) 742), was sent to the jury by the trial court and found in appellant's favor.

Reversed and rendered.